· FELIX A. BORER and others *vs.* A. H. E. LANGE.

August 20, 1890.

**Town Plat not in Compliance with Statute—Conveyance—Description.—Dedication of Streets.**—Where a tract of land is actually surveyed into blocks, lots, and streets, the effect of a conveyance to purchasers of separate lots and blocks according to such survey is to dedicate the streets therein to public use, independently of any statutory dedication. And where the plat of such survey fails to comply with the statutory directions so as to entitle it to be recorded, it may nevertheless be referred to for the purpose of describing lots or blocks, and parol evidence is admissible to apply the descriptions in the deeds to the subject-matter.

**Same — Conveyance — Description — Evidence of Location of Lost Stakes.**—Where the lots and blocks are actually surveyed on the land, and stakes set at the corners thereof, it is competent to prove by parol the location thereof, and if lost or destroyed the places where they were set. And though the plat be imperfect or incomplete as respects the location of monuments, or in respect to measurements and distances, yet, where land so surveyed has been conveyed by reference thereto, and the location of the lots so conveyed and designated is well known by all parties interested, and susceptible of identification according to the actual survey on the ground, the description will be *held* sufficient to pass the title.

Appeal by defendant from an order of the district court for Le Sueur county, *Edson*, J., presiding, refusing a new trial.

*A. A. Stone* and *Horace Austin*, for appellant.

*B. S. Lewis*, for respondents.

VANDERBURGH, J.  In the southwest quarter of section 35, township 109, range 24, county of Le Sueur, is situated the village originally named "Logan," now called "Elysian."  The section is fractional on account of the presence of lakes, and the tract which would otherwise constitute a regular quarter-section is an irregular subdivision.  The land lying in the southeast corner, and extending for a considerable distance west and north, is occupied by the waters of Lake Elysian, and on the north of the town lie Lake Dustin and Lake Francis.  The town-

site was laid out in 1856, and has since been inhabited as such, and has grown into an organized village, with a population of 500 people, with the necessary stores, shops, and dwellings for their accommodation. John J. Conway was the original patentee of the land. After acquiring title, in September, 1856, he granted and conveyed an undivided half thereof to Levi W. Logan, and 1-32 part thereof to William S. Thorn. In 1885 he executed to Isaac Conway a deed purporting to convey by metes and bounds lands described therein as follows: "Beginning at the point where the north and south section line between sections 35 and 36, town 109, range 24, intersects the north shore of Lake Elysian; thence running southwesterly along the north shore of said lake to the point where the said north shore intersects the south section line of said section 35; thence westerly along the section line six hundred and six feet; thence running due north to the lake commonly known as 'Lake Francis;' thence running in a northeasterly direction along the shore of said Lake Francis to the point where the same intersects the quarter-line running east and west through the centre of said section 35; thence easterly along said quarter-line to the point where the same intersects the shore line of the lake commonly known as 'Lake Dustin;' thence running easterly along the south shore of said lake to the point where the same intersects the north and south section line between said sections thirty-five and thirty-six, (35 and 36,) and thence running southerly along said section line to the place of beginning; *being all the land* supposed to have been *platted as the town of Logan* in said county and state, and *described* in said supposed *plat* as blocks 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, which said supposed plat is *filed* in the office of the register of deeds in and for said county of Le Sueur; together with all the tenements," etc. In 1886, Isaac Conway executed to plaintiff Borer a deed purporting to convey the same land as above described, by metes and bounds, which is the land described in the complaint, and the grantee, Borer, thereafter conveyed two-thirds to the other plaintiffs, and the three claim to own 15-32 of the same, being the interest supposed to have been left in John J. Conway after his conveyances to Logan

and Thorn above referred to. The complaint alleges that the defendant has succeeded to the title of the remaining 17-32 of the land undivided, and asks for a partition.

The defendant denies that plaintiffs have acquired any title to the premises, denies the cotenancy, and that the plaintiffs are entitled to a partition. The defendant's contention is that the lots and blocks into which the land has been subdivided, according to the town plat of Logan, had already been partitioned between the parties holding the title, and that John J. Conway had conveyed away all his interest in the land before the deed to Isaac. These intermediate deeds having in fact been made by him, the material question in the case will be whether the description therein of lots and blocks in the town of Logan passed any title, the plaintiffs' contention being that, owing to defects in the plat, the lots and blocks cannot be located or identified upon the land.

The evidence clearly shows that in September, 1856, Conway and Logan caused the town-site mentioned to be surveyed and platted by Wright & Parsons, surveyors, upon the land in question held in common by them, under the name of "Logan," except a small irregular tract lying between Lakes Dustin and Francis on the north. Commencing at the section line, being the eastern boundary of the land, it was by them surveyed into streets and blocks, which were subdivided into lots, and the same were so marked and designated upon the ground by stakes set at the corner of each block and lot. The streets so surveyed were 4 rods wide, except on the east and west side, which were 60 feet wide. The lots in the regular blocks were 50 by 150 feet each, and the full blocks were 300 by 500 feet each. From east to west from the section line the tract so surveyed and platted included 4 blocks, of 20 lots each, besides the streets, and, including the fractional blocks located on the lakes, there were in all 25 blocks in the plat. The streets running east and west were named in their order "A," "B," "C," "D," "E," "F," "G," and the streets running north and south were called "First," "Second," "Third, "Fourth," "Fifth," respectively, in their order, the first and fifth being the marginal streets. The blocks are numbered consecutively from 1 to 24, inclusive, as recited in the deed to Isaac Conway. The plat was filed .

with the register of deeds in September, 1856. It was acknowledged by Conway and Logan, who dedicated the streets to the public, and the surveyors certify that it was surveyed for the proprietors on the S. E. fractional $\frac{1}{4}$ of section 35, township 109, range 24, as the town of Logan. It indicates on its face a scale of 200 feet to the inch, and shows the direction of the streets to be in conformity with the section lines. The names of the streets and the numbers of the blocks also appear thereon. The lots are numbered consecutively in one whole block and one fractional block, in their order. In the full block the numbers run from 1 to 10, inclusive, in the north tier of lots, from east to west, and from 11 to 20, inclusive, in the south tier of lots, from west to east; and in the fractional block, which is composed of the south tier of lots only, the numbers run from west to east, 11 to 20, inclusive. The plat corresponds in outline with the land in question, and indeed it must be assumed from the recital in the deed of John J. Conway to Isaac Conway, under whom the plaintiffs claim, that it was intended to cover the same land in question here. And as a matter of fact it appears that the survey and plat as corresponding thereto have recently been verified by an actual resurvey on the land. The plat was defective, and did not conform to the statute. The width of the streets, the size of the lots and blocks are not stated, and the location of the corners does not appear. After the original survey a considerable number of lots were sold according to the plat, and built upon, and the lots so occupied are still identified. Several of the streets have been used and travelled substantially on the original lines, and have been worked and improved by the public authorities of the village. It appears that upon the recent survey referred to, the corners of several lots and blocks were satisfactorily identified, and these, with the streets and topography of the land, enabled the experts to re-establish the original survey and locate the lots and boundaries therein. It also appears that the original proprietors, by deeds dated November 17, 1856, after the completion of the survey, partitioned the lots and blocks between themselves, by which Conway conveyed certain described lots to Thorn, and received a grant of certain lots and blocks from Logan, and, among others, the following entire blocks, viz., 2, 4, 7, 12, 20, 24, in the town of

Logan, and also conveyed to Logan a large number of lots and blocks, among others the following entire blocks, viz., 5, 10, 13, 19, 21. All these blocks were then well known to the parties, and susceptible of location upon the land. The title to those blocks, beyond question, passed to the respective grantees, who thereupon became the owners thereof in severalty as surveyed and platted.

As before stated, the lots in but one full block are numbered on the plat, the numbering being made consecutively around the block from 1 to 20, commencing at the northeast corner of the block. But the practical construction of all parties in interest has been to apply this method of numbering to all the other blocks that were subdivided into lots, for all these years, and the lots' have been so assessed and carried on the tax records. And 'the evidence appears to warrant the conclusion that by the general understanding and consent of the owners, residents of the town-site, and all parties interested, the lots in all the other blocks have been known and designated in the same way, and lots are so sold and conveyed. It further appears by stipulation that between the date of the partition deeds and June 2, 1872, John J. Conway had conveyed to divers parties named as grantees, by 33 deeds, in the aggregate 191 lots "in the town of Logan, county of Le Sueur, as surveyed by Wright & Parsons," which deeds, with the deeds previously mentioned, were all duly recorded.

As to purchasers, the effect of the conveyances of the blocks specially referred to, not to speak of the lots, was to dedicate immediately to public use all the streets in the town of Logan as surveyed and platted. *Hurley* v. *Miss. & Rum River Boom Co.*, 34 Minn. 143, (25 N. W. Rep. 917.) And we also think it sufficiently appears that the several deeds passed the lots as well as the blocks therein described, because we think that, by the contemporaneous and well-known construction put upon the plat and survey by all parties interested, it is clear enough that the lots described could be identified and located upon the ground by the description given. The partition deeds were not intended by the parties as an idle ceremony. The deeds were not invalid upon their face. The only question is as to the location of the lots described. *Williams* v. *Langevin*, 40 Minn 181, (41 N. W. Rep. 936.) And parol evidence is admis-

sible to show that there were lots in this survey of that description, and to identify the lots described. *Noonan* v. *Lee*, 2 Black, 499, 504. The stakes were visible till after 1872, and if they have since decayed it is competent to prove by witnesses the places where they were set as in other cases of lost monuments. *Turnbull* v. *Schroeder*, 29 Minn. 49, (11 N. W. Rep. 147.) It is not a question of construction at all, but of location and identification. And town lots so long known and recognized by particular numbers in connection with the plat by the owners and purchasers will pass by such description. And there is no evidence tending to show that they could not be so identified. *Tetherow* v. *Anderson*, 63 Mo. 96, and cases. Though the defects in the plat were such that it was not entitled to be recorded, it was in fact filed. The effect of a reference to it in deeds was to incorporate it in the same. *Noonan* v. *Lee, supra.* Plaintiffs stand in the shoes of John J. Conway, and are bound by his prior conveyances. They are also bound by the terms of his deed to Isaac Conway, and the reference to the survey and plat of the town of Logan. They are by that deed chargeable with notice of all that appears upon the plat, and of the survey, and of all that the inquiry suggested thereby would lead to. The fair presumption must then be from the undisputed evidence in the case, that the lots assumed to be conveyed by the parties could all be identified, and that Conway's interest in the land passed as was intended. There certainly can be no presumption under this evidence that it did not so pass. The parties to this action are not, then, tenants in common of the tract in controversy. The findings of fact were not warranted, and the partition should be refused.

Order reversed.