# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

61 1
62 454
61 1
69 279

GREAT NORTHERN RAILWAY COMPANY and Another v. CITY OF
ST. PAUL and Others.[1]

May 1, 1895.

Nos. 9172—(144).[2]

**Plat—Construction.**

Where a person surveys and plats his land into blocks, lots, streets,
and alleys, all the lines upon such plat represent the intent of the own-
er, and the meaning expressed by such lines should be deemed as ef-
fectual as that of the words or language found thereon.

**Same—Dedication of Street.**

Where the owner of land draws and executes a plat thereof, and desig-
nates a strip thereon, by lines, as a street, and makes conveyances ac-
cording to such plat, such strip is irrevocably dedicated to the public
use as a street.

**Same—Evidence.**

Upon the evidence in this case, *held,* that the premises in controversy,
the full length thereof and to the width of 60 feet, next adjoining block
80, according to the Case plat, constitute a public highway; but *held,*
that the evidence is insufficient to establish the 20-feet strip as part of a
highway.

On Motion for Reargument. May 18, 1895.[3]

**New Trial—Finding against Evidence.**

Where, in an action for land on the ground of adverse possession, on
evidence requiring a finding that defendant has possession and an ease-

---

[1] Reported in 63 N. W. 96.          [2] See note on page iv., supra.

[3] Reported in 63 N. W. 240.

ment in a part of the tract, and plaintiff has possession of the other part, a finding is made that defendant is in possession of the whole tract, and that plaintiff, being without title or possession, cannot maintain his action, if the exact part each party is in possession of cannot be determined without a new finding by the appellate court, a new trial must be granted.

Action by Great Northern Railway Company and St. Paul, Minneapolis & Manitoba Railway Company in the district court for Ramsey county to enjoin defendant city and the other defendants, its contractors, from constructing a bridge in Broadway street in the city of St. Paul from Prince Street to and across the Mississippi River to West St. Paul. The case was tried without a jury before Brill, J., whose findings of fact, so far as material thereto, are referred to in the opinion. The court found as conclusions of law (1) that Broadway was a public street extending south of Water street, 80 feet wide, to the tracks of the Union Depot Company, used by plaintiffs, and that plaintiffs, or either of them, had not the right to possession thereof, to the exclusion of the public, save a small portion upon the westerly side occupied by the end of plaintiffs' building; (2) that the city could not build said bridge until it had acquired the right by condemnation proceedings to interfere with the enjoyment of the property abutting on said street, and until the grades of the streets running to and intersecting and crossing Broadway should be fixed so far as might be necessary by reason of the erection of said bridge; and directed that judgment be entered accordingly. A motion by defendant city to strike out the second conclusion of law and to insert in lieu thereof the following: "Neither plaintiff is entitled to any relief against the defendants or any of them by injunction or otherwise" was denied by the court. From an order denying their motion for a new trial, plaintiffs appealed. Modified.

*M. D. Grover* and *Cyrus Wellington*, for appellants.

The acts of an owner in dedication should be deliberate and unequivocal, manifesting an unmistakable intent permanently to abandon his property to a specific use. An offer of dedication must be accepted by the public within a reasonable time and before the offer has been revoked. People v. Reed, 20 Pac. 708; City

of Galveston v. Williams, 69 Tex. 449, 6 S. W. 860; Chicago v. Drexel, 141 Ill. 89, 30 N. E. 774; Wilson v. St. Paul, M. & M. Ry. Co., 41 Minn. 56, 42 N. W. 600; Field v. Manchester, 32 Mich. 279; Hayward v. Manzer, 70 Cal. 476, 13 Pac. 141; People v. Reed, 81 Cal. 70, 22 Pac. 474; Village of Grandville v. Jenison, 84 Mich. 54, 47 N. W. 600; County of Wayne v. Miller, 31 Mich. 447; Bell v. City of Burlington, 68 Iowa, 296, 27 N. W. 245; Littler v. City of Lincoln, 106 Ill. 353.

*Leon T. Chamberlain* and *Walter L. Chapin*, for respondents.

When land is platted and conveyances are made by reference to the plat, all the streets designated thereon are at once irrevocably dedicated to the public use. Hurley v. Mississippi & R. R. R. Co., 34 Minn. 143, 24 N. W. 917; Wilder v. City of St. Paul, 12 Minn. 116 (192); City of Winona v. Huff, 11 Minn. 75 (119); Dillon Mun. Corp. § 640; Bartlett v. Bangor, 67 Me. 460; Wyman v. Mayor, 11 Wend. 487; Shea v. City of Ottumwa, 67 Iowa, 39, 24 N. W. 582; Maywood Co. v. Village of Maywood, 118 Ill. 61, 6 N. E. 866; Elliott, Roads, 111; Logan v. Rose, 88 Cal. 263, 26 Pac. 106; Steel v. City of Portland, 23 Ore. 176, 31 Pac. 479; City of Hannibal v. Draper, 15 Mo. 634; Pope v. Town of Union, 18 N. J. Eq. 282; Matter of 29th St., 1 Hill (N. Y.) 189; Matter of 39th St., 1 Hill (N. Y.) 191; Matter of 32d St., 19 Wend. 128; Rowan v. Portland, 8 B. Mon. 232; Bissell v. New York C. R. Co., 23 N. Y. 61; Carter v. City of Portland, 4 Or. 339; Rives v. Dudley, 3 Jones Eq. (N. C.) 126; Huber v. Gazley, 18 Ohio, 18; Fisher v. Beard, 32 Iowa, 346; Schenley v. Commonwealth, 36 Pa. St. 62; City of Cincinnati v. Lessee of White, 6 Pet. 431; New Orleans v. United States, 10 Pet. 662; Evansville v. Evans, 37 Ind. 229; Arrowsmith v. New Orleans, 24 La. An. 194; Commonwealth v. Alburger, 1 Whart. 469; Commonwealth v. McDonald, 16 S. & R. 390; In re Opening of Pearl St., 111 Pa. St. 565, 5 Atl. 430, 2 Cent. Rep. 308, citing Trutt v. Spotts, 87 Pa. St. 339; Fox v. Union Sugar Refinery, 109 Mass. 292; Toby v. Taunton, 119 Mass. 404; Herbert v. Rainey, 54 Fed. 248; Rainey v. Herbert, 3 U. S. App. 592, 5 C. C. A. 183, 55 Fed. 443; City of Indianapolis v. Kingsbury, 101 Ind. 200; Town of Derby v. Alling, 40 Conn. 410; Trustees of M. E. Church v.

Council of Hoboken, 33 N. J. Law, 13; Bartlett v. Bangor, supra; Town of Lake View v. Le Bahn, 120 Ill. 92, 9 N. E. 269.

Dedication may be complete and irrevocable before the actual improvement thereof is acquired by the city; nor does non-user work abandonment. Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247; State v. Leaver, 62 Wis. 387, 22 N. W. 576; Reilly v. City of Racine, 51 Wis. 526, 8 N. W. 417; Curran v. City of Louisville, 83 Ky. 628; City of St. Paul v. Seitz, 3 Minn. 205 (297). Good faith of a purchaser for value is presumed. Bank of Farmington v. Ellis, 30 Minn. 270, 15 N. W. 243; Carter v. Allan, 21 Gratt. 241; Carr v. Callaghan, 3 Litt. 365; Anthony v. Wheeler, 130 Ill. 128, 22 N. E. 494. The use by plaintiffs and their predecessors of the land was subordinate to the public easement. Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438, 52 N. W. 913. The persons interested in the 20-feet strip showed an intention to abandon it to the public and allowed it to become part of the street. Morse v. Zeize, 34 Minn. 35, 24 N. W. 287; Wilder v. City of St. Paul, supra; Case v. Favier, 12 Minn. 48 (89).

BUCK, J. A voluminous record or paper book of nearly 1,000 pages, and the briefs of counsel containing over 200 pages, are presented for our examination. The case comes before the court upon an appeal from an order denying the plaintiffs' motion for a new trial.

The plaintiffs are railway corporations created and organized under the laws of this state, and they commenced this action in the month of August, 1892, to restrain the defendants from constructing a bridge in Broadway street from Prince street to and across the Mississippi river to West St. Paul. The plaintiff the St. Paul, Minneapolis & Manitoba Railway Company, referred to in the finding of the facts by the court below as the "Manitoba Company," was organized in May, 1879, and has succeeded to all of the corporate rights and franchises of the St. Paul & Pacific Railroad Company and the First Division of the St. Paul & Pacific Railroad Company, each of which was a railroad corporation duly organized under the laws of this state.

Prior to the year 1852 Charles W. Borup was the owner of cer-

tain real estate in the county of Ramsey, which he caused to be surveyed and platted into streets, lots, and blocks. He caused such plat to be recorded in the office of the register of deeds of Ramsey county on May 1, 1852, and designated it "Kittson's Addition to St. Paul." In the proceedings in this case it is called "Brunson's Plat." Block 80 forms a part of Kittson's addition, all of which was owned by Borup, except such portions as he had sold outside of block 80, and which premises it was stipulated between these parties he had owned from some time previous to June 1, 1852, until April 18, 1854. The stipulation stops with April 18, 1854, as the time to which Borup's ownership continued. Borup's title was acquired through Norman W. Kittson and Louis Roberts, who were the patentees from the United States of certain lands, including that in dispute. Kittson's addition was located on the N. E. corner of the S. E. ¼ of section 32, township 29 N., and part of lot 1 of section 5, township 28 N., all in range 22 W. On April 18, 1854, Charles W. Borup and wife and others signed a deed which was acknowledged April 20, 1854, conveying to Charles H. Oakes blocks numbered 78, 79, and 80 in Kittson's addition. By virtue of a deed of the same date, the same grantors conveyed Kittson's addition to the same grantee, except a certain portion thereof which had been theretofore conveyed to another party. The court below found as a fact that Charles H. Oakes in 1854 was the owner of the tract comprising Kittson's addition, and that he caused another plat of Kittson's addition to be made, including therein land not included in the Brunson plat, and that he caused the same to be recorded in the office of the register of deeds on December 1, 1854, and which plat is referred to as the "Case Plat."

By the Brunson plat Market street, now called Broadway, terminates on the northerly boundary line of block 80; but by the Case plat Broadway extends to the Mississippi river, leaving block 80 on the easterly side thereof, and of the same width as the other principal blocks. On the Case plat Market street is designated as 60 feet wide; the remainder of the streets are designated as being 66 feet wide. Broadway runs north and south, and upon the westerly side thereof, and adjacent thereto, is a strip of land 20 feet wide, and the westerly line of this strip is the westerly line of Kittson's addition. This 20-feet strip is part of the land con-

veyed by Kittson to Borup, and Borup owned the same May 1, 1852. This strip appears upon the Brunson and Case plats, and that part of it north of Water street has been acquired by the city of St. Paul, according to the finding of the court below. Water street extends past and along the northerly boundary of block 80; and intersects Broadway at the northwesterly corner of such block. The premises in dispute are westerly of and adjoining block 80, according to the Case plat, and extend to the westerly line of Kittson's addition, being a strip 80 feet wide, and also extend from Water street to the Mississippi river; being, as is claimed, a southerly part of Broadway, which is one of the main thoroughfares of the city. Upon the west side of the Mississippi river is State street, nearly or quite opposite to this strip in dispute; and State street is in the city of St. Paul, and is a public thoroughfare running from the west bank of the Mississippi river to and beyond the south limits of the city.

The city attempted to build a bridge across the river to connect State street with Broadway, so as to afford a direct means of communication between the business parts of the city upon each side of the river. From an examination of the Brunson plat it is quite evident that Borup did not intend to extend Market street to the Mississippi river; but it is just as evident that Oakes, by his plat, did so intend. The lines upon each side of the street extend down to the river, and were put there for a purpose; and they are just as much a part of the plat as the lines defining the numerous other streets, alleys, and blocks upon any other part of the plat. It is the whole plat which represents the intent of the owner, and imposes upon him the binding obligations which are as sacred as the words of a deed. Oakes must be deemed to have executed the map with a full knowledge of the legal rights and obligations which arise from the drawing and execution of such a map. Courts should and will give full effect to the meaning expressed by the lines as well as by the language upon the map. We had occasion in the recent case of Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820, quite fully to state our views upon this question of the legal effect of lines upon a plat of this character. And we are of the opinion that this act of Oakes in so executing and recording the plat called the "Case Plat," and the acts which were done under

it by the city of St. Paul, and the use of the street, constituted a dedication of it for public use as such street.

We do not attach much importance to the fact that the plat was not so executed as to constitute a statutory dedication. At common law, the evidence of the public right might rest in parol. The making of a plat like this, allowing people to travel the designated strip, and making conveyances according to the plat, would all go to show the intent of Oakes to dedicate Market street as a public highway. While acts of the owner outside of the execution of a map may be considered in determining the question of dedication, yet when a map is executed and recorded, and conveyances made according to it, it is not then in the power of the owner to say that the lines upon the plat have a different meaning than that which they appear to have upon the face of it. This is certainly so as to persons purchasing lots of the owner according to the description upon the plat in good faith, and relying upon the map so drawn and executed, because none of the lines should be regarded as superfluous or meaningless. City of Noblesville v. Lake Erie & W. R. Co., 130 Ind. 1, 29 N. E. 484; Gilbert v. Emerson, supra. And "when the offer of dedication is made, and is accepted and acted upon by the public to such extent that to permit the offer to be withdrawn would operate as a fraud, the title of the public to its right is completely vested. And such title is none the less perfect because there may be no express grant of the right, and no written evidence of it." Ray, Neg. Imp. Dut. (Personal) 83. This court held in Borer v. Lange, 44 Minn. 281, 46 N. W. 358, that, independent of any statutory dedication, a conveyance of separate lots and blocks by actual survey operated to dedicate the streets therein to public use. And in Hurley v. Mississippi & R. R. B. Co., 34 Minn. 143, 24 N. W. 917, it was held that "dedication of streets and public places, properly marked and designated upon the plat of a survey of urban property, is complete upon conveyances being made of lots included in such survey with reference to such plat, though not properly certified for record."

It is immaterial in this case that Oakes laid out or platted the Kittson property which he had purchased of Borup by an additional, different plat. If he owned the property, he was at liberty to make such an additional plat of the property as he saw fit, not inconsistent

with the public and private rights previously acquired under the Brunson plat. Beyond that right, he could dedicate streets to public use, or make conveyances to other parties; and, having done so, he would be deemed to have adopted such plat as his own, and be bound by the lines upon it. He certifies upon the Case plat that he gives the streets and alleys, as designated upon it, for public use. On the next day after filing the Case plat, Oakes and his wife conveyed by warranty deed, to different persons, over 150 lots according to that plat. On December 1, 1854, Oakes and his wife conveyed to Charles Borup a considerable portion of Kittson's addition, and on September 5, 1855, Charles Borup and wife conveyed to Pierre Chouteau, Jr., & Co. all of their rights in and to Kittson's addition, except a few acres therein excepted in the deed of conveyance. Whether the deed from Oakes to Borup, and from Borup to Chouteau, and from him and wife to Julia Maffitt, to the First Division of the St. Paul & Pacific Railroad Company, conveyed any title to block 80, we do not deem it necessary to decide, nor do we decide that question, except, upon the finding of the court below, it assumes that plaintiffs are the owners thereof, and for the purposes of this appeal we assume it to be true, but fail to find any evidence to justify the finding. In 1858, 1859, and 1860, Pierre Chouteau and wife made several conveyances of various lots in Kittson's addition according to the plat thereof, as surveyed by James A. Case. Pierre Chouteau, Jr., died in 1866, and his interest in Kittson's addition descended to his heirs and devisees, Charles Chouteau and Julia Maffitt; and they, by numerous deeds made during a period of time extending from 1866 to 1871, conveyed away a large number of lots, the descriptions in the deeds being according to the Case plat.

Such conveyances entitled the purchasers to have such streets remain open to the public. It was not necessary that the streets should be opened at the time of the sale. We are of the opinion that there is ample evidence to show that Oakes, by his execution of the Case plat, and making numerous conveyances to different persons according to it, intended that Broadway should extend to the river, and that the meander line referred to in these proceedings is not a material matter, as such lines are not boundary lines, and are made only for the purpose of defining the sinuosities of the bank of a lake

or stream, and as a means of ascertaining the quantity of land generally for which the United States government required payment.

It nowhere appears that the defendant city in any manner has refused to accept the dedication made by Oakes according to the Case plat, nor in any manner abandoned or declined to use the highways as indicated upon said plat. On the contrary, the evidence shows that the city, by various acts, has recognized and adopted the plat according to the lines and language appearing upon it. Among other acts of the city in that respect, in 1873 it built a large main sewer down Broadway to the Mississippi river, and has ever since maintained and used the same as part of its sewer system. In 1870 the city established the grade of said street to the Mississippi river, and in 1875 it did the grading upon Broadway south of Water street. In October, 1877, the city laid water mains through Broadway to the Mississippi, and under said river to the opposite side, and ever since that time it has used and maintained said water mains as a part of its system of waterworks. Part of the distance opposite block 80, such water mains are laid through and over the said 20-feet strip. But even nonuser by the city would not have operated as an abandonment by it,—certainly not up to the time when it appears it did actually use it for street purposes. Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247.

It was conceded on the trial that Broadway is 80 feet wide north of the south line of Water street to Fourth street. The court below found that Broadway is a public street extending south of Water street, 80 feet wide, to the tracks of the Union Depot Company, and that plaintiffs, or either of them, have not the right to the possession thereof, to the exclusion of the public, except a small strip on the westerly side of the 20-feet strip, and near the railway tracks opposite to block 80, where a building belonging to the plaintiffs extends into said 20-feet strip some 2 or 3 feet, for a distance of about 20 feet, and where it has stood for some years. There is certainly ample evidence to sustain this finding as to the 60 feet delineated as a street on the Case plat. But the evidence as to the 20-feet strip presents a different phase from that of the 60 feet designated upon the plat as a street. There is no plat or deed that indicates that this was ever intended to be dedicated or donated for street purposes. Hence, as to it, the city gets no aid

from the plat, or the conveyances according to it. On the contrary, the plat, so far as it has any probative force at all, indicates that the owners of the property did not appropriate, or intend to appropriate, any more than 60 feet for a street. Also, many of the acts of user by the public, or the assertion of right on the part of the city, are susceptible of a construction making them referable exclusively to the street as indicated on the plat. Hence, to establish its right to the 20-feet strip, the city has to rely wholly upon acts of user upon its part clearly referable to the strip, by and with the tacit consent of the owners of the land.

There are two rules which, to a certain extent, are applicable to the evidence upon this point: (1) Where a party is in possession under color of record title, as by deed or condemnation proceedings or the like, possession of part of the tract described in the deed or other written color of title may often be referred to the entire tract, so that actual occupancy of part will be deemed possession of the whole, where it is not in the adverse possession of some one else. But, where a party is in possession without any color of record title, his possession will only be deemed co-extensive with the land in actual occupancy. (2) Where a street or highway of a certain width is delineated on a plat, it should require clearer and stronger proof to extend the public easement outside of such delineated limits by acts of user than if no such limits were designated on the plat. We think that this is so in view of the well-known fact that, where the adjacent land is uninclosed and unimproved, public travel and use often transcend the limits of the platted or laid street without any actual intention on part of the owner to dedicate it to public use, and without any expectation or understanding on the part of the public that he has thus dedicated it.

Viewed in this light, we are of the opinion that the acts of user by the public of the 20-feet strip are of too casual, fugitive, and fragmentary character to establish the acquisition of a public easement, at least in all of it. It may be well for us to say that we do not construe the reconveyance of December 1, 1854, from Oakes to Borup, as covering that part of Kittson's addition situate in section 5. If it does not, then the fee of all the land in dispute, including the 20-feet strip, is still in Oakes. So far as the 60 feet

is concerned, this fact is immaterial, under the view we have taken of the evidence. As to the 20-feet strip, the possession of the railroad company, so far as it has possession, is good title against the city, unless it establishes a better one. The city itself has no record title. Whatever right it has, if any, is only by user with the consent of the owners of the land. Such a state of facts may exist that the city has a public easement in part of the strip, and not in the whole of it. But all that we can decide on this appeal, in regard to the 20-feet strip, is that the evidence does not justify a finding that the city has an easement in the whole of it, less the small portion referred to in the findings as occupied by the end of plaintiffs' building.

On the trial the plaintiffs asked leave of the court to amend their complaint to the effect that they, their grantors and predecessors entitled to the ownership of the premises, had been in adverse possession of the premises from 1852 up to February 1, 1895. The court denied the motion, upon objection by the defendants. This question was not therefore at issue. It may, however, be proper for us to say, as bearing upon the question of public user of the street, that the existence of the railroad tracks upon the premises in controversy for a considerable portion of the time would not have defeated the claim of a highway by user, if it still remained open for public travel, and was so used. Speir v. Town of New Utrecht, 121 N. Y. 420, 24 N. E. 692; Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438, 52 N. W. 913.

The question as to whether the city can build the bridge which it is attempting to erect before it has acquired the land by condemnation proceedings to interfere with the enjoyment of the property abutting on the street, or before the grades of the streets running to and intersecting and crossing Broadway are fixed so far as may be made necessary by reason of the erection of the bridge, is not properly before us, as there is no appeal upon the part of the city.

The order of the court below is affirmed as to the 60-feet strip, and reversed, and a new trial ordered, as to the 20-feet strip.

On Motion for Reargument.

The following opinion was filed May 18, 1895.

PER CURIAM.   The ground upon which the defendant asks for a reargument is that the trial court found that the plaintiff has no title to any part of the 20-feet strip, and that the city is in the actual possession of the whole of it, and therefore the plaintiff, being a stranger to both the title and the possession, cannot maintain this action, even if the city's possession has not ripened into an easement.  Assuming that the findings will admit of the construction claimed for them, and conceding, as is probably true, that the evidence not only justified, but required, a finding that the city is in possession of and has acquired an easement in a part of this strip, the evidence would seem almost equally conclusive that the railway company is, and that the city is not, in possession of another part, and has not acquired an easement in it;  yet there is no way by which the one part can be definitely segregated from the other, unless this court should attempt to make a new finding. Under this condition of things, the only way was to order a new trial as to the whole 20-feet strip.

Motion for reargument denied.