STATE OF MINNESOTA ex rel. CITY OF ST. PAUL v. ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY and Others.[1]

Nov. 18, 1895.

Nos. 9703—(119).

Defective Plat—Dedication of Street.

    *Held*, from certain town plats introduced in evidence on the trial of this action, which, because of incompleteness and defective execution, were not statutory plats, the intention of the owners of the land platted to dedicate to public use as a street what is now known as "Grove Street," in the city of St. Paul, across a certain valley, and also to dedicate what is known as "Burr Street," from the west bank of this valley to where it would intersect said Grove Street, clearly appears; and, further, that such platting amounted to an offer to dedicate, which might be and has been accepted by the authorities of said city.

Railway Company—Liability to Bridge Track.

    In a mandamus proceeding to compel certain railway companies to build a bridge over their tracks where they cross these streets in the valley, the court found that the streets could not be improved by filling without acquiring land for slopes outside of the street lines, or by building high retaining walls along these lines, and this would be more expensive than bridging, and, further, that the propriety, necessity, and expediency of bridging these streets arose from natural conditions, the topography of the ground on each side of the valley, and not from the laying of the

1 Reported in 64 N. W. 1140.

tracks or their frequent use by respondents. *Held*, that the findings were supported by the evidence, and justified the conclusion of law that no obligation rested upon the respondents to build the bridge.

Petition by relator in the district court for Ramsey county for a writ of mandamus to St. Paul, Minneapolis & Manitoba Railway Company, Great Northern Railway Company, St. Paul & Northern Pacific Railway Company, and Northern Pacific Railroad Company. An alternative writ having issued and defendants having answered, the case was tried without a jury by Kerr, J., who found as conclusion of law that defendants were entitled to judgment that the alternative writ be discharged and that the relator take nothing by the proceeding, and ordered judgment accordingly. From an order denying a motion for a new trial relator appealed. Affirmed.

*E. J. Darragh* and *Hermon W. Phillips*, for appellant.

*M. D. Grover* and *C. Wellington*, for respondents Great Northern Railway Company and St. Paul, Minneapolis & Manitoba Railway Company.

*C. W. Bunn* and *Davis, Kellogg & Severance*, for respondents St. Paul & Northern Pacific Railway Company, and Northern Pacific Railroad Company and receivers.

COLLINS, J.[2]  This was a mandamus proceeding to compel the respondent railway companies to construct a bridge over their respective tracks where they cross what are claimed to be Grove street and Burr street in the city of St. Paul.

The situation can be easily understood by reference to plaintiff's exhibit numbered 18. It appears that when government section 32 was in its natural condition it was crossed diagonally by a valley or gorge about 50 feet deep and about 600 feet wide. The sides of this valley were precipitous, and could not be ascended or descended, except by pedestrians, and then with great difficulty. The bottom was quite level, but very wet, and a small stream of water, called "Trout Brook," flowed through it in a southeasterly direction, emptying into Phalen Creek a short distance from the locus in quo. It was conclusively shown on the trial that, as they were in a state of nature, the sides and bottom of the valley could not have been used for or-

2 Buck, J., took no part.

dinary streets. It was therefore impassable, except for persons on foot, unless bridged or graded from side to side. The center or quarter line, east and west, of section 32, crossed this depression at an angle of about 20 degrees, and a space of 33 feet on each side of this line is now Grove street, according to relator's contention. Burr street is at right angles, and northerly from Grove, and intersects the latter, if at all, about the center of the valley.

The first railway track along this valley was laid in 1862 on a road-bed graded along the easterly hillside, a·few feet above the bottom land. As needed for railway purposes, the right of way was widened, the valley filled in and graded, the waters of the stream were turned under an archway, and more tracks laid. They are all within the sides of the valley, and all from 30 to 40 feet below the natural surface of the ground where Grove and Burr streets strike the same. These tracks, now 25 in number, are in constant use, so that, if the natural obstacles in the way of crossing could be removed, surface crossings would not be feasible. And, if the tracks were entirely out of the way, the natural obstacles we have mentioned would still remain. To make these streets, Grove and Burr,—assuming for the present that they are streets,—available for public use over and across this valley, they would have to be graded or bridged, and this without regard to what has been done by respondent railway companies. The necessity would exist had no tracks been laid along the valley; and from the evidence of the city engineer, which stood unquestioned, it clearly appeared that the fill was so great that neither street can be properly graded, or so as to be of public use, without condemning ground for slopes on each side of the street lines, or by building high retaining walls upon either side within the street lines; and the engineer frankly admitted that it would be much cheaper to construct the contemplated bridge than to erect retaining walls and grade the streets. He expressed no opinion as to the relative cost of a bridge and the cost of acquiring ground for slopes outside the street lines, and then grading, but, if the latter was the cheaper method of the two, and the streets could thus have been put in a condition for travel at a less expense than they could be bridged, it was incumbent on the relator to show it, and in this way establish the fact that the railway tracks impaired and interfered with the proper use of the public ways.

The court below found that, owing to the natural conformation of

the ground where the streets cross the valley, and the expense of securing by condemnation proceedings or otherwise the right to make the necessary slopes outside the street lines if a fill was made, it would be necessary, and would be the least expensive and most expedient plan, to secure a crossing of said valley by bridging the same. We think this finding was justified by the evidence, although, as before stated, the city engineer did not compare the cost of a bridge with that of filling with slopes outside the street lines. The court also found that such necessity or expediency was in no manner enhanced or affected by the occupancy of the valley by the tracks, but has always existed, and will continue to exist, solely because of natural conditions, and independently of and without reference to the fact that respondent companies have occupied the ground at the bottom of the natural depression. This must be obvious. Bridging the tracks, that the streets may be opened to the public, is proper, necessary, and expedient, not because of the presence of the tracks, but because of natural surface features of the ground, and lay of the land topographically. The natural conditions would remain if every track were removed, and such removal would have no effect upon the propriety, necessity, or expediency of bridging the valley, instead of improving the streets in some other way. So that the necessity and expediency in question arise independently of, and are entirely unaffected by, the respondents' tracks or their frequent use.

Under the charter provisions of the company which built the tracks now used by the Great Northern Company, it had the right and authority to construct its railway upon and across any public or private way, road, or street, subject, however, to the duty, liability, and obligation to put such way, road, or street in such condition and state of repair as not to impair or interfere with its proper use. The court below so found, and it also found that the St. Paul & Northern Pacific Railway Company, which built the remaining tracks, had, by its charter provisions and the laws of the state, the same right and authority, and was subject to the same duty, liability and obligation. Natural causes and obstacles impaired, interfered with, and prevented the public use of certain parts of these streets located at the bottom of the valley; not the railway tracks, nor their frequent and almost continuous use for railway purposes; and these causes and obstacles remain. They can be overcome in the most proper and expedient way

by bridging, and the necessity of this method of overcoming such causes and obstacles is wholly independent of respondents' tracks. If it were feasible or possible to cut down the sides of the valley, and make surface crossings, and the necessity for a bridge grew solely out of the fact that such crossings would be dangerous to the public, a different question would be presented. From the findings of the court above mentioned, and upon the admitted facts, we do not hesitate to say that the duties and obligations imposed upon the respondents with respect to street crossings have not been disregarded or violated, and that, assuming their tracks are laid in public streets, they are under no legal obligation to build the bridge in question.

The conclusions of law of the court below could have been rested on the findings of fact we have mentioned, but the court also found that Grove street and Burr street were never legally platted, and that neither was ever used or traveled across the valley between the points of high ground on either side. It is evident that the plats introduced in evidence known as Plaintiff's Exhibits 1, 2, 3, and 5, were incompletely and defectively executed in several respects. They were not executed in accordance with the statute, and were not statutory plats. But we are clearly of the opinion that it was the intention of the parties who owned the land covered by the plats, and who caused the plats to be made, to dedicate to public use as a street Grove street, so called, of the full width of 66 feet, and completely across the valley; and also to dedicate Burr street, so called, from the west bank of the valley to where it would intersect Grove, about the middle of the valley. There was an offer to dedicate evidenced by the plats. These owners subsequently conveyed the property platted by lots and blocks, referring to such plats, and such conveyances worked an estoppel in favor of the grantees, and no subsequent reservation could be made without their consent; and the rights so granted may be adopted and enforced by the public authorities. Hurley v. Mississippi & R. R. Boom Co., 34 Minn. 143, 24 N. W. 917; Borer v. Lange, 44 Minn. 281, 46 N. W. 358; Great Northern Ry. Co. v. City of St. Paul, 61 Minn. 1, 63 N. W. 96. And it is also to be noticed that, although more than 40 years have elapsed since these plats were made and filed for record, none of the original proprietors, and none of their remote or immediate grantees, excepting these respondents, have ever questioned the complete dedication of these streets, so far as the record shows. We

are further of the opinion that from the evidence it conclusively appears that the city accepted the offers of dedication when its council adopted a resolution approving the Folsom survey and map of the city. At any rate, the authorities accepted the dedicatory offers when they took action towards opening the streets over the railway tracks. That the city may not be bound in the future by the findings in opposition to these views, it is ordered that so much of the findings of fact as are in conflict herewith be stricken out.

The order appealed from is affirmed.