ANNA HELD ETZLER v. WALTER F. MONDALE, ATTORNEY
GENERAL, AND ANOTHER.

123 N. W. (2d) 603.

August 30, 1963—No. 38,745.

*Walter F. Mondale,* Attorney General, and *Victor J. Michaelson,* Special Assistant Attorney General, for appellant.

*Van Valkenburg & Moss,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Anna Held Etzler, referred to herein as the applicant, instituted these proceedings to vacate a portion of the plat of Spring Green South, an addition to the village of Golden Valley, which was designated therein as a "PARK," and to have title to the tract so vacated adjudged to be in her name. This is an appeal by the attorney general of the State of Minnesota, as representative of beneficiaries of trusts under Minn. St. 501.12, from a judgment of the District Court of Hennepin County—

"1. Vacating that part of the plat of Spring Green South [an addition to the village of Golden Valley in Hennepin County] therein designated as PARK, which plat was dated September 9, 1953, * * * and terminating any trust interest in the public created or imposed thereon in the Certificate of donation and dedication * * *.

"2. That Applicant, Anna Held Etzler, is the owner in fee simple of such portion of said plat so vacated, freed from any interest imposed or created by the donation and dedication certificate in said plat, * * *.

"3. That the Registrar of Titles be, and he hereby is authorized and directed to issue to Anna Held Etzler a Certificate of Title for said land so herein vacated which land shall now be described in such Certificate as follows:

"That part of the Southwest Quarter of the Northwest Quarter of Section 30, Township 29, Range 24, Hennepin County, Minnesota, lying East of the East line of Turners Crossroad, South of the South line of Lots 1, 2, 3 and 4, Block 2, Spring Green South, West of the West line of Lot 19, Block 2, said addition, and North of the North line of the alley separating Spring Green South from Registered Land Survey No. 106, Files of the Registrar of Titles, Hennepin County, Minnesota.

"Subject to a utility easement along the North 5 feet thereof as contained in the plat and dedication therein of Spring Green South."

It is the contention of the attorney general that under both Minn. St. 505.01[1] and 501.11(7)[2] that part of the plat of Spring Green

---

[1]Minn. St. 505.01 provides: "Plats of land may be made in accordance with the provisions of this chapter, and, when so made and recorded, every donation to the public * * * shall operate to convey the fee of all land so donated, for the uses and purposes named or intended, with the same effect * * * as though such land were conveyed by warranty deed. Land donated for any public use in any municipality shall be held in the corporate name in trust for the purposes set forth or intended."

[2]Minn. St. 501.11(7) provides: "Express trusts may be created for any of the following purposes:

* * * * *

"(7) Any city or village may receive, by grant, gift, devise, or bequest, and take charge of, invest, and administer, free from taxation, in accordance with the terms of the trust, real or personal property, or both, for the benefit of any public library, or any public cemetery, or any public park, located in, or within ten miles of, such city or village, or for the purpose of establishing or maintaining a kindergarten or other school or institution of learning therein.

"Provided that any such city or village shall, with the approval of the

South dedicated as a park and vacated by the above judgment is held in trust for the public as an express charitable trust by virtue of its dedication and that only pursuant to the provisions of § 501.11(7) may its use as a park be terminated; and that the proceedings here did not comply with the provisions of that section in that (1) the proceedings were not instituted by the village nor was there any attempt to derive funds from a sale of the tract involved to be credited to trust funds of the village; and (2) the evidence failed to substantiate a finding that such premises were unfit for use as a park so as to authorize the termination of their use for such purpose. The attorney general appears in these proceedings pursuant to § 501.12, subd. 3,[3] which requires that

district court of the county wherein such city or village is located, sell, lease, or otherwise dispose of, freed of the provisions of such trust, any such tract, lot, parcel, reserve, block, or subdivision of the platted part of any such city or village, embraced within the area described in such grant, gift, devise, or bequest when any such tract, lot, parcel, reserve, block, or subdivision of the platted part of any such city or village shall be found to be unfit for the uses and purposes expressed in any such grant, gift, devise or bequest.

"The income realized from any such sale, lease, or disposal of such trust property shall be credited to the funds of said trust of the city or village wherein said property is located."

[3]Minn. St. 501.12, subd. 3, provides in part: "* * * When it shall appear to the district court of the proper county that the purpose and object of such charity is imperfectly expressed * * * or that the circumstances have so changed since the execution of the instrument creating the trust as to render impracticable, inexpedient, or impossible a literal compliance with the terms of such instrument, such court may, upon the application and with the consent of the trustee, and upon such notice as the court may direct, make an order directing that such trust shall be administered or expended in such manner as in the judgment of the court will, as nearly as can be, accomplish the general purposes of the instrument and the object and intention of the donor without regard to, and free from any, specific restriction, limitation, or direction contained therein. No such order shall be made without the consent of the donor of the trust if he is then living and mentally competent. The attorney general shall represent the beneficiaries in all cases arising under this section and it shall be his duty to enforce such trusts by proper proceedings in the courts."

Minn. St. 501.12, subd. 4, provides in part: "Nothing in this section

the attorney general shall represent the beneficiaries in all cases wherein it is sought to modify the terms of an express charitable trust.

It is the contention of the applicant that the dedication by plat of a public park under § 505.01 does not create a perpetual, inviolate charitable trust under § 501.11(7); and that any trust created by the dedication of the plat under § 505.01 is subject to the provisions of § 505.14 as to vacation and termination. Section 505.14 provides in part:

"Upon the application of the owner of land included in any plat, and upon proof that all taxes assessed against such land have been paid, and the notice hereinafter provided for given, the district court may vacate or alter all, or any part, of such plat, and adjudge the title to all streets, alleys, and public grounds to be in the persons entitled thereto; * * *. The petitioner shall cause two weeks published and posted notice of such application to be given, the last publication to be at least ten days before the term at which it shall be heard; and the petitioner shall also serve personally, or cause to be served personally, notice of such application, at least ten days before the term at which the application shall be heard, upon the mayor of the city, the president of the village, or the chairman of the town board of the town where such land is situated."[4]

In the district court proceedings, Weldwood Nursing Home, Inc., appeared in opposition to the application in addition to the attorney general but it has not appealed from the judgment.

---

* * * shall in any manner impair, limit, or abridge the operation * * * of the whole or any part of any existing statute authorizing the creation of corporations for charitable purposes or permitting municipal corporations to act as trustee for any public or charitable purpose under any existing statute."

[4]This section also provides: "* * * The district court shall not vacate or alter any street, alley, or public ground dedicated to the public use in or by any such plat in any city, town, or village organized under a charter or special law which provides a method of procedure for the vacation of streets and public grounds by the municipal authorities * * *." It is conceded that this latter provision has no application here.

The facts as found by the referee in the registration proceedings and adopted by the district court as a basis for the judgment which are not in dispute are as follows:

"1. That on the 9th day of September, 1953, the Applicant herein, Anna Held Etzler, was the owner in fee simple of the land embraced in a plat known as Spring Green South, located in the Village of Golden Valley, in Hennepin County, * * *. That said plat was registered in the office of the Registrar of Titles for said County on September 26, 1953, and was entered as a memorial on Applicant's Certificate of Title No. 188310, outstanding in her name, as Document No. 404937. That the Applicant and Robert J. Etzler, her husband, had duly executed said plat. That the Village Council by written endorsement thereon under date of September 15, 1953, had duly accepted and approved said plat.

"2. That said plat contained a certificate of dedication thereon whereby said parties did state that they 'do hereby donate and dedicate to the public for public use forever the alley, the park, Radisson Road and Circle Down, as shown on the annexed plat.' That a portion of said plat was marked PARK, which tract had a measurement of approximately 150 feet in width from north to south, and approximately 510 feet in length from east to west, with the Westerly end thereof adjoining a public highway known as Turners Crossroad. Said PARK was located practically in the most Southwesterly corner of the plat, and was separated from the South line of the plat only by an 18-foot alley. The Northerly 5 feet of said park area was subject to a utility easement 5 feet in width. That the portion of said plat marked PARK may be more particularly described as: [see above for legal description].

"That the Registrar of Titles had never entered a separate Certificate of Title for the land embraced in said plat designated as PARK.

"3. That as of the time of said hearing, all taxes assessed against such land had been paid, and the Applicant had published and posted the Notice of Vacation of that portion of the plat embraced within the area designated PARK, and had also served upon the Mayor, who was then also the President of said village, said

Notice of Vacation, according to the requirements of M. S. A. Section 505.14. That the Applicant, Anna Held Etzler, has never conveyed her interest and title in said park area, and she is still the owner thereof, subject to the effect, if any, imposed on said park area pursuant to the donation and dedication contained in said plat. That the Court has jurisdiction of the within proceeding.

\* \* \* \* \*

"5. That the land designated PARK in said plat has never been improved nor devoted to park purposes by said village, nor has it been used as a part by any other person or party. That the PARK area has remained wholly vacant from the date of the creation thereof as a park to the time of the trial except for a period of about 3 years when said village had placed on said land a temporary construction and engineer's building and used it as a supply depot for storage of sewer pipes and equipment while said village constructed a lateral and sewer system in certain highways in the neighborhood.

"6. That the public interest of the Village of Golden Valley would best be served by vacating that portion of the plat of Spring Green South designated therein as a PARK. That said PARK area is unfit for the use and purpose for which it was donated and dedicated in said plat."

On February 18, 1958, at a regular meeting of the village council of Golden Valley, a resolution was adopted as follows:

"WHEREAS, a portion of the Plat of Spring Green South, Hennepin County, Minnesota, has been dedicated to the public for park purposes, and is presently held by the Village of Golden Valley in trust for such purposes, which said portion is more particularly described as follows, to-wit: [legal description as above set forth]; and

"WHEREAS, said lands are deemed unfit for the purposes for which dedicated, and it is deemed to be in the public interest that all present or future plans or intents for such use be abandoned, and that said lands be permitted to revert to the former owner thereof freed from said dedication,

"Now THEREFORE BE IT RESOLVED by the Village Council of the Village of Golden Valley, that the above described portion of the

plat of Spring Green South Addition be abandoned as a park, and as to any and all public use or interest therein; and that the Mayor of the Village and the Village Clerk with the attestation of the Village Clerk, be authorized and directed to execute and deliver a Quit Claim Deed releasing said lands to the person or persons adjudged entitled thereto, upon the filing with the Village Clerk of a certified copy of a Decree vacating said portion of said plat, and releasing said dedication, pursuant to Minnesota Statutes Section 505.14."

On June 14, 1960, the village of Golden Valley through its proper officials executed and delivered a quitclaim deed of the premises to the applicant. Thereafter, she instituted these proceedings under § 505.14.

(On June 7, 1960, at a meeting of the village council a further resolution was adopted which in all respects affirmed the resolution of February 1958.)

Other undisputed evidence submitted indicates that the property is not adaptable for park purposes. For a period of about 3 years the village used it as a supply depot for sewer construction and constructed a small shack thereon for tools and equipment. At the time of the commencement of the present proceedings the property had been vacant for a number of years without development or landscaping of any kind.

Adjacent to its northern boundary line is the Weldwood Nursing Home. North of this structure a number of blocks in the addition are "zoned" for residential purposes and a number of houses have been constructed thereon. To the east of the tract involved is an area, approximately 910 feet long by 150 feet wide, which has been "zoned" for the construction of two 2½-story, 12-unit apartment buildings. To the east beyond this, certain lots are "zoned" for commercial purposes and a real estate office building presently occupies a number of these. Further east beyond this area is Trunk Highway No. 100 with large "cloverleaf" and "diamond" interchanges at its intersection with State Highway No. 12 (also known as Wayzata Boulevard).

Adjacent to the south line of the tract is an 18-foot alley and

service road which services a number of commercial structures on adjacent property to the south, which front on Highway No. 12. This portion of the addition has been "zoned" for commercial purposes. Already constructed thereon are an office building, a gasoline service station, and a shopping center. The alley described is used extensively for delivery of wares and merchandise to these structures. State Highway No. 12, upon which such structures front, is a wide and heavily traveled highway, with a large number of warehouses and industrial structures adjacent to it in the near vicinity of the tract involved herein.

Also fronting on Highway No. 12 a short distance west of the tract vacated are a number of cafes, taverns, grocery stores, and other commercial enterprises.

Turners Crossroad, a state aid road 66 feet in width, forms the westerly line of the vacated tract. Adjacent to it in close proximity to the vacated tract are a number of industrial developments including large warehouses and commercial structures. As a result substantial traffic by trucks, truck transports, semi-trailer trucks, and tandem trucks with tractors attached constantly travel back and forth upon it, particularly beween the hours of 8 a. m. and 5 p. m.

It seems clear that Anna Held Etzler is the owner of property within the plat of Spring Green South and hence authorized under Minn. St. 505.14 to institute these proceedings. Under § 505.01, as dedicator of the platted area which includes the park, she is presently owner of the fee title which underlies the easement for park purposes to which this tract is subject. As stated in Betcher v. Chicago, M. & St. P. Ry. Co. 110 Minn. 228, 234, 124 N. W. 1096, 1099:

"* * * It has been the uniform holding of this court that the dedication of land, pursuant to this statute, to the public for streets, alleys, and public grounds, does not pass the fee-simple title thereto, but only such an estate as the purpose of the trust requires, and that the fee, subject to the public easement, remains in the dedicator and his grantees."

Accord, Schurmeier v. St. Paul & Pacific R. Co. 10 Minn. 59 (82); City of Winona v. Huff, 11 Minn. 75 (119). In Headley v. City of

Northfield, 227 Minn. 458, 462, 35 N. W. (2d) 606, 608, this rule was adhered to as follows:

"At an early date our law with respect to the effect of a statutory dedication was settled. In City of Winona v. Huff (1866) 11 Minn. 75 (119), involving a statutory dedication under the quoted statute of a public square for public use by a plat executed and filed about one year prior to the instant one, we held that where the owner of land dedicates on a plat thereof a public square for public use, the dedication operates to reserve to the owner the fee to the public square and to grant to the municipality, wherein it is situated, *in trust* for the benefit of the public at large only such estate or interest therein as the purposes of the trust require. See, 44 C. J., Municipal Corporations, § 4022. In the City of Winona case and in Schurmeier v. St. P. & P. R. Co. (1865) 10 Minn. 59 (82), 88 Am. D. 59, affirmed, 74 U. S. (Wall.) 272, 19 L. ed. 74, there cited, we cited and considered territorial statutes and stated at length the reasons for so holding. * * *

\* \* \* \* \*

"It is entirely inaccurate, therefore, to speak of the public square here involved as property belonging to the city of Northfield. Rather, it should be spoken of as the property of the dedicator or his successors in interest, in which the city, as trustee for the benefit of the public and not in its own right as such, has such an interest as is necessary to enjoy the use thereof as a public square."

It would follow that since applicant was "an owner of land included in * * * plat," she was qualified under § 505.14 to apply to the district court to have such park area vacated.

■ We are further of the opinion that § 501.11(7), which relates to the right of a municipality to receive by grant, gift, devise, or bequest, real property for public park purposes in accordance with the terms of an express trust, and was enacted long after §§ 505.01 and 505.14, would have no application to park property included within a plat dedicated pursuant to § 505.01. It seems clear that § 505.14 was intended to set up a procedure whereby an owner of property within such a plat might apply to the district court for a

vacation of all or a portion of such plat. Were we to hold that notwithstanding this, an express charitable trust is created under c. 501 as to all public grounds within a dedicated plat, the vacation procedure outlined under § 505.14 would become totally ineffective, particularly as to an original plat dedicator seeking to establish rights accorded him thereunder.

Further, under § 501.17, when property is conveyed to a municipality for park purposes, the whole estate in such property, rather than a mere easement therein, vests in the municipality to whom it is conveyed as trustee. Thus, in In re Declaration of Trust by Bush, 249 Minn. 36, 43, 81 N. W. (2d) 615, 620, we stated:

"* * * Pursuant to M. S. A. 501.17, the trustee is possessed of the whole legal title and estate and the beneficiary, as his separate interest in the res, has no title or estate therein but only a vested right on his part to enforce in equity—as a chose in action—the performance of the trust for his benefit."

Likewise, in In re Application of Mareck to Register Title, 257 Minn. 222, 229, 100 N. W. (2d) 758, 763, we stated:

"* * * In the case of a charitable trust, the trustee assumes an affirmative duty to use the property in accordance with the trust. In the case of a conditional fee, the grantee has permissive right to use as directed and he may lose the title if he departs from such use.* * *

"While the use to which the property was put may not be conclusive as to the nature of the conveyance, it is a factor which the court could take into consideration in determining the intention of the parties at the time the conveyance was made. * * * [I]t is reasonable to assume that when the strip was conveyed to the village the grantor reserved the right to have it back in the future in the event that it became usable by virtue of abandonment of the streetcar right-of-way, if the village did not then make use of it as a park or violated the other restrictions contained in the deed, and that the village accepted the property on such conditions."

However, as indicated above, under § 505.01 the legal effect of a plat dedication is a conveyance in trust to the municipality of a terminable easement only, in any area designated in the plat for

public use, and the fee title thereto remains in the dedicator, subject to the easement. City of Winona v. Huff, *supra;* Betcher v. Chicago, M. & St. P. Ry. Co. *supra;* Headley v. City of Northfield, *supra.* Upon vacation of the area for park purposes, the title of the dedicator no longer remains subject to the easement which has thereby terminated, and the municipality is left without title of any kind whatever. Accordingly nothing would remain for the municipality to "sell * * * or otherwise dispose of" pursuant to the requirements of § 501.11(7), as it would have had the whole legal title and estate been acquired originally under this section.

■ However, it would seem that, while applicant was authorized to proceed under § 505.14, no effort or attempt was made to accord due process to the purchasers of lots within the platted area. We have held that one purchasing a lot within a plat may rely upon the dedication of streets and alleys shown therein, and possesses the right to use the same. Bryant v. Gustafson, 230 Minn. 1, 40 N. W. (2d) 427; see, also, Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820. Certainly the same right would extend to the use of areas dedicated for park purposes. While § 505.14 makes provision for determination and payment of damages to owners or occupants of land affected by vacation proceedings, it does not appear to us that any adequate procedure for according due process to such persons is provided for therein. It is true that under this section provision is made for publication and posting of notice of proceedings to vacate platted areas, but under circumstances such as are presented in this case, in our opinion this method of obtaining service would fall far short of due process under the Fourteenth Amendment of the Federal constitution as construed by the United States Supreme Court. See, Walker v. City of Hutchinson, 352 U. S. 112, 77 S. Ct. 200, 1 L. ed. (2d) 178; Mullane v. Central Hanover Bank & Trust Co. 339 U. S. 306, 70 S. Ct. 652, 94 L. ed. 865. See, also, Meadowbrook Manor, Inc. v. City of St. Louis Park, 258 Minn. 266, 104 N. W. (2d) 540; Wisconsin Elec. Power Co. v. City of Milwaukee, 272 Wis. 575, 76 N. W. (2d) 341, remanded per curiam, 352 U. S. 948, 77 S. Ct. 324, 1 L. ed. (2d) 241; Wisconsin Elec. Power Co. v. City of Milwaukee, 275 Wis. 121, 123, 81 N. W. (2d) 298, 299.

In future proceedings under § 505.14, it should be kept in mind that adequate service must be made upon owners or occupants of land within the platted area, and that service by the publication and posting of notice of the procedure, as provided in § 505.14, will be deemed inadequate. In the present proceedings, the district court's determination accordingly would not constitute a bar to the claim of any such owner or occupant not appearing herein for damages resulting from the vacation of the park area within the plat of Spring Green South.

■ The attorney general contends that the evidence is insufficient to support the findings and conclusions of the court to the effect that the "public interest of the Village of Golden Valley would best be served by vacating that portion of the plat of Spring Green South designated therein as a PARK"; and that "said PARK area is unfit for the use and purpose for which it was donated and dedicated in said plat." We have held that the authority vested in the district court to vacate portions of platted property is one which rests within its sound discretion, and that its conclusions with respect thereto are not subject to reversal here except for a clear abuse of such discretion. Fowler v. Vandal, 84 Minn. 392, 87 N. W. 1021. Here, as indicated by the summary of the undisputed facts above set forth, it does not appear that there was any abuse of the discretionary authority of the district court in making its order for judgment vacating that part of the plat of Spring Green South designated as "PARK" and terminating any trust interest in the public created or imposed in the certificate of donation and dedication in said plat. Such facts clearly establish that the area surrounding the park has changed in the last few years so that at present it is entirely surrounded by industrial or commercial enterprises to the extent that its uses for park purposes may no longer be convenient or reasonable. The attendant probability that with the vacation of such park, the property may be devoted to commercial or industrial purposes from which the village may derive substantial tax revenue adds weight to the court's determination that public interests will best be served by its action.

Affirmed.