Application of **AVANT–GARDE, INC.**, to Vacate a Portion of the Plat of Lakeview Division First Addition.

No. C6–91–1276.

Court of Appeals of Minnesota.

Feb. 25, 1992.

Review Denied April 29, 1992.

---

William M. Burns, Robin C. Merritt, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, for respondent Avant–Garde, Inc.

William P. Dinan, Duluth City Atty., Thomas J. Schindler, Asst. City Atty., Duluth, for appellant City of Duluth.

Harold A. Frederick, Michael Cowles, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for appellants Loren D. Youngblom, et al.

Considered and decided by AMUNDSON, P.J., and FORSBERG and KALITOWSKI, JJ.

## OPINION

FORSBERG, Judge.

Certain property owners and the City of Duluth (City) appeal from a judgment of the district court vacating dedication of a portion of a platting as a public park in the City. The area was originally dedicated as a public park by respondent Avant–Garde, Inc., allegedly in exchange for changes in zoning and land use restrictions on other portions of the original plat. When the other portions of the platting proved unmarketable, Avant–Garde moved to vacate the platting pursuant to Minn.Stat. § 505.14 (1990). The district court ordered vacation, and judgment was entered. We reverse.

## FACTS

For approximately 30 years, Avant–Garde, whose principal shareholder is George Hovland, has owned about 33 acres of land in the City. Avant–Garde has been attempting to develop portions of this land since approximately 1970, when Hovland requested a rezoning of property from single-family residential to a higher density category. Avant–Garde proposed construction of 685 housing units on a portion of the land and conveyance of 17.3 acres to the City as public or open space park. After granting the rezoning request, citizens' objections led to a planned referendum on

the rezoning. Avant–Garde then withdrew its proposal and no referendum was held.

Avant–Garde again sought approval for a special use permit for multiple family housing on a portion of the land. On November 1, 1976, the City Council granted the special use permit subject to conditions, including height limitations. These limitations were more restrictive than those requested by Avant–Garde. As a part of this plan, the 17.3 acres would be dedicated to the City as a public space.

In keeping with this plan, and prior to obtaining the City's approval for construction of multiple family housing, the City required a plat to be filed. This plat, filed December 27, 1979, included a portion dedicated as public park space. Title to this portion of the platting was never separately conveyed to the City. Hovland indicated in his testimony at trial that such conveyance would only be forwarded when a building permit was issued for the construction of multiple family housing on the plat, and the construction was completed.

The City made some improvements on the area dedicated as a park, including a termination point of a ski lift tow rope. The land also contained hiking and cross-country skiing paths, which were maintained throughout the year.

Throughout this time, and continuing up to the present, certain parties purchased portions of the land for single family homes. A number of these sites adjoined or abutted the area of the plat dedicated as a park. These landowners and others regularly used the park for recreation activities.

Avant–Garde was unable to develop the land for multiple family housing, allegedly due to the height restrictions. Avant–Garde filed an application with the district court requesting a vacation of a portion of the plat, including the dedicated park, on August 23, 1990. Avant–Garde contended the dedication was conditional upon the building permits, and such development was no longer economically feasible through no fault of its own. The motion for vacation was opposed by a number of the adjoining landowners, who had purchased the property from Hovland, and by the City.

After trial, the district court found the intent of the parties was to make a conditional dedication of park land. The court held it was not economically feasible to develop the multiple family units with height restrictions, and public policy was served by developing single family housing and thus increasing the tax base on the property. It granted the motion to vacate and entered judgment pursuant to Minn. Stat. § 505.14. Appeal was taken from entry of that judgment.

## ISSUE

Did the trial court abuse its discretion by ordering vacation of the dedication of the platted park space?

## ANALYSIS

■ This matter comes before us subject to the abuse of discretion standard of review. "[T]he authority vested in the district court to vacate portions of platted property is one which rests within its sound discretion, and * * * its conclusions with respect thereto are not subject to reversal here except for clear abuse of such discretion." *Etzler v. Mondale*, 266 Minn. 353, 365, 123 N.W.2d 603, 611 (1963). The appropriate standard of review thus requires reversal when a district court's findings of fact have no basis in the record.

■ The question of whether a property dedicated to public use is to be vacated turns on whether the public interest will best be served by the vacation. *In re Schaller*, 193 Minn. 604, 614, 259 N.W. 529, 534–35 (1935).

> The contest here is not a mere bout between private individuals with members of the public acting merely in the role of spectators. The public has a real and substantial interest in the outcome.

*In re Baldwin*, 218 Minn. 11, 15, 15 N.W.2d 184, 186 (1944). The vacation statute specifically provides a street or alley should not be vacated unless it or any part thereof "is useless for the purpose for which it was laid out." Minn.Stat. § 505.14 (1990). This

same standard has been applied to public parks. *See Etzler*, 266 Minn. at 365, 123 N.W.2d at 611–12 (park dedicated along highway found to be no longer convenient or reasonable for park purposes).

Another preliminary matter is the nature of the public park dedication transaction.

It has been the uniform holding of this court that the dedication of land, pursuant to this statute, to the public for streets, alleys, and public grounds, does not pass the fee-simple title thereto, but only such an estate as the purpose of the trust requires, and that the fee, subject to the public easement, remains in the dedicator and his grantees.

*Betcher v. Chicago, Milwaukee & St. Paul Ry. Co.*, 110 Minn. 228, 234, 124 N.W. 1096, 1099 (1910). Thus, "the legal effect of a plat dedication is a conveyance in trust to the municipality of a terminable easement only, in any area designated in the plat for public use, and the fee title thereto remains in the dedicator, subject to the easement." *Etzler*, 266 Minn. at 363–64, 123 N.W.2d at 610. Thus, title never passed to the City on the disputed portion of the plat, ostensibly because the building permit was never issued.

There are basically two points of contention surrounding the vacation order in this case. First, the City and the landowners claim the district court never adequately considered how the public interest would best be served, nor was there a basis in the record allowing a conclusion that the public interest *could* be served by vacating the plat.

The district court found, as a matter of law, the public interest is best served by permitting economically feasible development of housing in the park land. The court also noted certain portions of the park upon which the City has made permanent improvements, and some portions upon which the City may in the future make further permanent improvements, would be deeded outright to the City under the terms of vacation.

In *Etzler*, a public park dedication was vacated along a highway because, in part, "the property may be devoted to commercial or industrial purposes from which the village may derive substantial tax revenue." *Id.* at 365, 123 N.W.2d at 612. However, the holding in *Etzler* was mandated because the land was no longer suitable or useable for public park purposes, and the tax revenue was merely a factor adding weight to the vacation determination. *Id.* Here, there is no question that the land remains useful, and used, for public park purposes.

■ Strictly speaking, the "usefulness" standard applies only to vacation of streets and alleys between lots, blocks, or plats. *See* Minn.Stat. § 505.14. However, we believe it is consistent with the legislature's intent and the applicable case law to extend the "usefulness" standard to dedications for park lands as well. *See Etzler*, 266 Minn. at 364, 123 N.W.2d at 611 ("We have held that one purchasing a lot within a plat may rely upon the dedication of streets and alleys shown therein, and possesses right to use the same. Certainly the same right would extend to the use of areas dedicated for park purposes.") (citations omitted). Such a standard will be helpful to district courts as a readily identifiable, bright line rule on which to base future decisions. Further, this rule best serves the public interest in preserving, as much as possible, the invaluable system of parks and public lands for which our state is justifiably proud.

■ The second point of contention between the parties is, in essence, an estoppel argument. Each party claims detrimental reliance on certain promises. *See* Restatement (Second) of Contracts § 90 (1981).

The district court agreed with Avant–Garde that there was a basic agreement between it and the City that the land would be dedicated as public park only so long as a building permit was issued, and presumably the buildings were in fact built. Since this condition was never met, the intention of the parties was not fulfilled and, essentially, the district court estopped the City from continuing its claim of easement running with the land.

The City and the abutting landowners also advance an estoppel argument. The landowners argue they bought the property because of the dedication of park land in such close proximity. There is evidence in the record that each of the complaining landowners regularly use the park land.

We believe the City and the landowners have the better argument. As previously noted, abutting landowners have a right to depend upon the use of areas dedicated for park purposes. Their reliance is readily ascertainable from their actions. Avant–Garde, on the other hand, failed to memorialize a record of the agreement in any way. While pointing to correspondence from City employees regarding negotiations on the platting, Avant–Garde cannot show any evidence of a commitment by the City Council to make the dedication conditional. Likewise, Avant–Garde was the vendor of the property which the landowners purchased. Avant–Garde in no way informed or warned the landowners of a conditional dedication of the park, nor could constructive notice be served upon them since the condition was never recorded.

Finally, Avant–Garde counters there is no evidence in the record that any economic harm would befall the landowners. To the contrary, Avant–Garde points to testimony by a real estate professional/expert that the property would still appreciate in value regardless of whether the land was dedicated as a public park. Thus, Avant–Garde argues there can be no estoppel where there is no economic damage.

We disagree. A contract theory may be applied to non-economic loss. The United States Supreme Court has held non-economic damages are at least sufficient to provide standing to challenge state action under environmental regulations where the contesting parties show evidence of actual use of the land. *See Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). This burden was met by the landowners in this case, and is sufficient to show detrimental reliance.

## DECISION

The district court abused its discretion where it vacated the dedication of park land still in use for park purposes. The judgment of vacation is therefore reversed.

Reversed.