JAMES C. BRYANT AND OTHERS v. KARL E. GUSTAFSON
AND ANOTHER.[1]

January 6, 1950.

No. 34,775.

[1]Reported in 40 N. W. (2d) 427.

*E. Luther Melin,* for appellants.
*Vennum, Neville, Wright & Newhall,* for respondents.

MATSON, JUSTICE.

Appeal from a judgment permanently enjoining defendants—and all persons acting under them—from preventing plaintiffs and any other lot owners, inclusive of their families and guests, from using the entire length and width of a strip of land or roadway designated as Maple Lane.

In 1908, the Minnetonka Realty Company, a corporation, as the fee owner of an island caused the same to be surveyed and platted into 42 lots as "Shady Island, Lake Minnetonka, Hennepin County, Minnesota," in full compliance with the requirements of M. S. A. c. 505. The instrument of dedication annexed to the plat expressly stated that the owner—

"donates and dedicates to the public use forever Shady Island Road, and *to the use of lot owners* of said 'Shady Island * * *,' forever, *Maple Lane,* Oak Lane, and Cedar Lane as thereon shown."

The location of the disputed roadway known as Maple Lane, as well as the location of the lots owned by the respective parties, is shown on a *portion* of the plat, here reproduced.

With specific reference to said plat, lots have been sold over the years to various individuals who have built residences principally for summer occupancy. James C. Bryant and Edith M. Bryant, two of the plaintiffs herein, since 1932 have been at all times the owners of lots 25 and 26. In the months of May and June 1945, defendants by various deeds of conveyance became, and ever since have been, the owners of lots 16, 18, 19, and 20, and the southwesterly 50 feet of lot 17. Lot 17, except the southwesterly 50 feet thereof—which has never been owned by defendants—was in January 1944, together with Cedar Lane, Oak Lane, and Maple Lane, conveyed by the Minnetonka Realty Company to one of the plaintiffs, namely, the Shady Island Association, with the proviso that "The said lanes [were] to be held for the joint use and benefit of the lot owners of said Shady Island." The Shady Island Association is a corporation whose stockholders consist of the lot owners.

For a period of 25 years immediately prior to the acquisition by defendants of their lots, the residents of Shady Island, as well as others, had used the waters in front of the southwesterly 50 feet of lot 17 as a place of bathing. In going to these waters, it was customary to follow Maple Lane to lot 19, and then pass over lots 19, 18, and the southwesterly 50 feet of lot 17. The portion of Maple Lane lying between lot 16 and lots 17, 18, and 19 has never been developed for travel and is wholly unimproved. Defendants, shortly after acquiring lots 16, 19, and 20 for residential purposes, found that the peacefulness of their new abode was disturbed to an annoying extent by other Shady Island residents, their children, and guests, who passed over lots 18, 19, and the southwesterly part of lot 17 to go swimming. In the hope of eliminating all disturbance, defendants proceeded in good faith to acquire ownership of the entire area affected by purchasing lot 18 and the southwesterly 50 feet of lot 17. They then sought to exclude as trespassers all persons, inclusive of the Bryants and other island residents, who attempted to pass over their property en route to the bathing beach, and also to bar such persons from passing over that part of Maple Lane contiguous to their lots. Plaintiffs thereupon brought this action

to have the defendants permanently enjoined from interfering with the right of travel on Maple Lane and from interfering with the use of an alleged easement in the form of a footpath across lots 19, 18, and the southwesterly 50 feet of lot 17. The trial court found that for more than 15 years plaintiffs and other lot owners had had access to the bathing beach on the shore of the northwesterly 50 feet of lot 17 by passing across said lots, but concluded that in doing so they had acquired no easement, because no definite route had been followed for the full statutory period. The trial court further found that Maple Lane had been dedicated, under the original plat of 1908, to the perpetual use of the lot owners of Shady Island, and that the defendants had acquired no prescriptive right therein superior to the common right enjoyed by all lot owners. Judgment was entered (1) denying plaintiffs the right to an easement to a diagonal path across the said lots; (2) determining that defendants had acquired no right or title by prescription or otherwise to any part of Maple Lane, except such right of user as had been originally dedicated and granted to all lot owners; and (3) enjoining defendants from preventing plaintiffs, other lot owners, their families or guests from using Maple Lane for its full length and width. Defendants appeal from this judgment.

Properly raised by this appeal are the following issues:

(1) What is the nature or legal status of a roadway which has been dedicated—pursuant to statute—not to the use of the public as a whole, but only to the use of that fraction of the public which is represented by the lot owners within a certain platted area?

(2) Does a lot owner, whose lot has been purchased with reference to a plat pursuant to which certain streets or roadways have been dedicated to the use of the lot owners in the platted area, have a right or easement of user *only* in the street or roadway upon which his lot abuts—for the purpose of ingress and egress to a public highway—or does his right or easement of roadway user extend to all the streets, alleys, and roadways in the platted area?

(3) Have defendants acquired by prescription any right in Maple Lane beyond the right enjoyed by the lot owners generally?

(4) Will *mere nonuser* for any length of time operate as an abandonment of a street or roadway which has been dedicated pursuant to statute to the restricted use of the lot owners within a platted area?

■ In determining the nature or legal status of Maple Lane as a roadway, it is clear that it was expressly dedicated only to the use of the lot owners of the platted area—popularly known as Shady Island—and not to the use of the public as a whole. Further, we have the salient fact that the platting and dedication were made pursuant to M. S. A. 505.01, which expressly authorizes a dedication to *any person or corporation* other than the public as a whole. The statute reads:

"Plats of land may be made in accordance with the provisions of this chapter, and, when so made and recorded, every donation *to the public or any person or corporation* noted thereon shall operate to convey the fee of all land so donated, *for the uses and purposes named or intended, with the same effect,* upon the donor and his heirs, and in favor of the donee, *as though such land were conveyed by warranty deed.* Land donated for any public use in any municipality shall be held in the corporate name in trust for the purposes set forth or intended." (Italics supplied.)

The use of the word "person" authorizes a dedication to any number of persons, in that the singular includes the plural. § 645.08(2). By its express terms, the statute clothes any dedication thereunder with the same legal incidents that would be vested in the beneficiaries if the rights of user in the land had been conveyed by warranty deed. No distinction is made between a use dedicated to the public and one dedicated to a lesser group, except that where land is donated to a public use in a municipality it shall be held in the corporate name in trust for the purposes designated. It follows that in construing a plat the same legal principles apply whether the dedication is to the use of the public or to the use of a more restricted group of beneficiaries. See, Morgan v. Railroad Co. 96 U. S. 716, 24 L. ed. 743.

In construing a plat to determine the intent of the dedicator, the plat as a whole, inclusive of all lines and language found thereon, must be considered, and no part thereof is to be ignored as superfluous or meaningless. Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820; G. N. Ry. Co. v. City of St. Paul, 61 Minn. 1, 63 N. W. 96, 240. It is also a general rule that all ambiguities in a plat are to be resolved against the dedicator and to the reasonable advantage of the grantees of the dedicated use. See, 1 Elliott, Roads and Streets (4 ed.) § 130; 26 C. J. S., Dedication, § 49. He who purchases a lot with reference to a plat is deemed to have thereby purchased, as appurtenant to the lot, all the advantages, privileges, rights, and easements which the plat represents as belonging to the lot and as belonging to the owner thereof as a resident of the platted area, and this principle is applicable not merely to the roads and streets upon which the purchased lot abuts, but to all roads and streets of advantage or utility to the platted area as a whole. Gilbert v. Emerson, *supra;* Rowan's Ex'rs. v. Town of Portland, 47 Ky. (8 B. Mon.) 232; Bacon v. Onset Bay Grove Assn. 241 Mass. 417, 136 N. E. 813. In the Gilbert case we said (60 Minn. 66, 61 N. W. 822):

"* * * Each purchaser of a lot is entitled to the benefit of the plat as it appears when he purchases it. * * * It is not merely the street or alley upon which the purchased lot may abut that the purchaser has the privilege of using or enjoying, but all the easements, rights, privileges, and advantages which the plat represents."

In applying these principles to the plat of Shady Island, what do we find? The lines delineating the length and width of Maple Lane extend from Shady Island Road, a public thoroughfare, to the water's edge of Lake Minnetonka. If Maple Lane had been intended only to serve as a means of ingress and egress to the abutting owners, no doubt its northeasterly terminus would not have been extended to the lake shore, but only to a point approximately opposite the southwesterly boundary of lot 17. Fifty-seven years ago, we said in Village of Wayzata v. G. N. Ry. Co. 50 Minn.

438, 442, 52 N. W. 913, 914, with respect to a public street bordering on Lake Minnetonka:.

"* * * We know of no rule for determining the extent of a grant or dedication of land to public use, where a navigable lake or river is adopted as one of the boundaries, other than that applied in the case of a private grant. *Where, in a private grant, the land is bounded only by navigable water, the grantee takes to the low-water mark,* — [citing cases]—and the riparian rights go with the upland. Where the grant or dedication to the public is for the purpose of passage, and goes to the water, the conclusion—there being no indication of a contrary intention—is inevitable that the grant or dedication was intended to enable the public to get to the water for the better enjoyment of the public right of navigation."[2]   (Italics supplied.)

Where a passageway is dedicated by a plat to a use authorized by statute and such passageway leads to a navigable water, such dedication, whether it be to a quasi-public or a private use, is to be construed—absent an indication of a contrary intent—as intended to enable the beneficiaries of the use to get to such water for the more convenient enjoyment of recreation and navigation. Whether we consider the dedication of Maple Lane to the lot owners of Shady Island a dedication to a quasi-public use or merely a private grant, it follows that the intent of the donor, as revealed by the lines on the plat, must have been to give *all* lot owners access to Lake Minnetonka. The express language of the instrument of dedication is not to the contrary, and any ambiguity therein is to be resolved in favor of the lot owners generally. A road is designed to lead somewhere, and this one led to the lake. Access to the lake by a common route was undoubtedly one of the advantages and rights represented by the plat as inuring equally to all lot owners. It was an advantage to all of them to be afforded, at any time they desired, the opportunity to unite in building a common approach and a common dock to make the lake available for boating and other

[2]The above principle is cited with approval in In re Petition of Schaller, 193 Minn. 604, 612, 259 N. W. 529, 534.

recreational purposes without each lot owner being required to devote a part of his lot to such facilities. All lot purchasers, when the conveyance is made with reference to a plat, are deemed, in the absence of fraud, to have full knowledge and notice of all that appears upon the plat, and with knowledge of the legal effect thereof, whether the rights thereby conferred upon the lot owners generally be to the advantage or disadvantage of any particular purchaser. See, Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820; Borer v. Lange, 44 Minn. 281, 46 N. W. 358.

■ Defendants assert, however, that they and their predecessors in interest have by adverse possession acquired title to that portion of Maple Lane upon which their lots abut. Their position is wholly untenable for two reasons. In the first place, defendants did not take possession prior to 1943, and there is no evidence to sustain a finding that their predecessors in interest ever asserted a right of possession or claim to this portion of Maple Lane other than that which was possessed and enjoyed by the Shady Island lot owners generally. Insofar as defendants themselves have asserted a possession that is adverse to the rights of other lot owners, such possession has not continued for the required statutory period. See, § 541.02. In the second place, neither defendants nor their predecessors have paid taxes for five consecutive years on the strip of land constituting Maple Lane. *Where the land in question is separately assessed,* the payment of taxes by a disseizor—or his predecessors in adverse possession—for a period of five consecutive years during the period of adverse occupancy is a prerequisite to the acquisition of title by adverse possession. § 541.02; Skala v. Lindbeck, 171 Minn. 410, 214 N. W. 271.

■ Defendants also assert that the Bryants and other lot owners have lost their rights of user in the easterly end of Maple Lane by abandonment in fact. The only evidence of abandonment is that of nonuser. Maple Lane is not dedicated to public use and is not located within any municipality; therefore, under § 505.01 (above quoted), title to the land could not pass to any municipal corporation in trust for the dedicated purposes. Where no corporate or

other trustee is provided by statute or otherwise, the fee title to the dedicated land remains in the dedicator charged with a trust for the uses for which the dedication was made. Rowan's Ex'rs. v. Town of Portland, 47 Ky. (8 B. Mon.) 232, 238. Here, the original dedicator became the trustee of Maple Lane with all the Shady Island lot owners as the beneficiaries. The original dedicating trustee, and since 1944 its successor, the Shady Island Association, safeguarded the trust by paying the taxes assessed against the trust *res,* namely, the strip of land constituting Maple Lane. By the affirmative act of paying taxes, the trustee did all that was necessary under the circumstances to protect the lot-owning beneficiaries from a loss, through mere nonuser, of their easement in Maple Lane. It would indeed be a strange situation if the beneficiaries of a private trust, where no affirmative duty is imposed upon them, should lose their rights as beneficiaries where the trustee has done all that is required to preserve the trust *res.* By way of analogy, it is to be noted that where land, pursuant to statute, is dedicated to public use as a street within any municipality, the municipal corporation itself becomes the trustee, and that in such case, long continued nonuser of the street will constitute abandonment *only if accompanied by some affirmative or unequivocal acts of the trustee* which are indicative of an intent to abandon and which are inconsistent with a continuance of the easement. (See, Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. [2d] 588, and cases there cited.) In other words, whether a dedication be to a public, quasi-public, or private use, the affirmative acts of an intent to abandon are those of the trustee and not those of the beneficiaries of the trust use. In the instant case, the only affirmative act of the dedicating trustee, which accompanied the nonuser of Maple Lane, was the payment of taxes, and such affirmative act indicates the very opposite of an intent to abandon the roadway.

■ Defendants' answer contains a blending of allegations which are all lumped together en masse as constituting both an answer and a cross bill *(sic)*. See, 2 Pirsig's Dunnell, Minn. Pl. § 1827. Good practice requires that a separate and independent cause of

action intended as a counterclaim should be clearly segregated from the allegations properly belonging to the answer. Assuming that the so-called cross bill is sufficient to state an independent cause of action for affirmative relief against the plaintiffs by virtue of certain restrictive covenants contained in the deeds of the lot owners, we are confronted with the difficulty that the other affected lot owners should have been made parties to the action. It is the general rule that a cause of action which the defendant cannot maintain against the plaintiff alone, or one which cannot be determined without bringing in new parties plaintiff, cannot be pleaded as a counterclaim, at least without bringing in such new parties. Apelt v. Melin, 138 Minn. 269, 164 N. W. 979; 5 Dunnell, Dig. & Supp. § 7602; 2 Pirsig's Dunnell, Minn. Pl. § 1775. As purely defensive matter, the allegations of the answer pertaining to the restrictive covenants in the deeds have no bearing whatever upon the issues pertaining to the right of the lot owners to use Maple Lane.

The judgment of the trial court is affirmed.

Affirmed.