**Thomas J. DENMAN, et al., Appellants,**

v.

**Carl W. GANS, et al., Respondents,**

**Frank Muelken, Respondent,**

**Robert W. Miles, Respondent.**

No. C0–99–982.

Court of Appeals of Minnesota.

March 28, 2000.

M. Gregory Simpson, Patrick H. Elliott, Elliott Law Firm, P.A., Edina, and James D. Bates, Bryce D. Huemoeller, Huemoeller & Bates, Prior Lake, for appellants.

Gary L. Wilson, Vincent J. Moccio, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, and Scott D. Lake, Lake Law Firm, Prior Lake, for respondents Gans, et al.

Frank Muelken, Prior Lake, and Robert W. Miles, Prior Lake, pro se respondents.

Considered and decided by SCHUMACHER, Presiding Judge, PETERSON, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

In this real property dispute, appellants challenge the district court's conclusion that the subject property could not be adversely possessed or abandoned as a matter of law and findings that appellants failed to establish adverse possession or abandonment. Appellants also challenge the denial of their demand for a jury trial and their motion to amend the complaint. Finally, appellants challenge the district court's declaration excluding them from part of the property. Because evidence supports the district court's findings on adverse possession and abandonment and the court did not abuse its discretion in denying a jury trial or amendment of the complaint, we affirm. But, because there was no basis for the challenged portion of the declaration, we modify the court's order.

## FACTS

The property in dispute is located in the Green Heights subdivision adjacent to Prior Lake. The subdivision consists of 44 lots, ten of which are on the waterfront. In 1927, Thomas and Helen Simpkins subdivided the property into the 44 parcels along with roads, walkways, and the waterfront. Two walkways provide access from the back lots to the waterfront. In 1928, the Simpkins recorded a document that dedicated "the roads, drives, walks and waterfront as shown on the plat for the use of the respective owners of [Green Heights]."

In 1996, a dispute arose regarding the use and ownership of the waterfront area when a back lot owner installed a dock off one of the walkway accesses. Eventually, waterfront owners Thomas and Judy Denman brought an action asserting that their property ran to the waterline. A number of other waterfront property owners (appellants) filed similar complaints, alleging they had acquired ownership to the waterfront by adverse possession. Appellants also alleged that the back lot owners (respondents) had abandoned their interest in the waterfront.

Appellants demanded a jury trial, a request denied by the district court, and the case proceeded as a bench trial. At trial, a number of present and former residents of the subdivision testified. The waterfront owners generally testified that they be-

lieved they owned to the waterline. Through the years, the waterfront lot owners have constructed docks and boathouses on the waterfront. The waterfront owners also claimed that, prior to 1996 and as early as 1948, the back lot owners rarely used the waterfront and did so only with permission. After appellants' case-in-chief, they moved to amend their complaint to add a claim of boundary by practical location.

Respondents presented the testimony of a number of back lot owners. The back lot owners testified that, from as early as the 1950's, they had used the waterfront area without permission on numerous occasions. Many of the back lot owners, however, conceded that they were not aware of the Simpkins dedication until this dispute arose.

Near the end of trial, the parties agreed that the district court would be allowed to issue a declaration of rights, setting forth all of the right's of the parties to the use of the property. Following the trial, the court issued an order and a separate declaration of rights. The district court concluded that: (1) appellants' motion to amend the complaint would prejudice respondents; (2) appellants could not take title by adverse possession because the property was "quasi-public"; (3) appellants failed to prove all the elements of adverse possession; (4) respondents could not abandon the waterfront; and (5) appellants failed to prove abandonment.

In its declaration of rights, the court determined that appellants would be limited to constructing docks, boat-lifts, and fire-rings on the waterfront. With respect to the accesses, the court declared that respondents would have "exclusive" use of them.

## ISSUES

1. Were appellants entitled to a jury trial?

2. Did the district court err in concluding that the property could not be adversely possessed?

3. Were the district court's findings that appellants failed to establish adverse possession clearly erroneous?

4. Did the district court err by concluding that the property could not be abandoned?

5. Were the district court's findings that appellants failed to establish abandonment clearly erroneous?

6. Did the district court abuse its discretion by refusing to permit amendment of the complaint?

7. Did the district court err by excluding appellants from the accesses?

## ANALYSIS

### 1. Right to a jury trial

■■■■ Our constitution guarantees a jury trial in "all cases at law." Minn. Const. art. 1, § 4. Additionally, Minn. R. Civ. P. 38.01 provides:

In actions for the recovery of money only, or of specific real or personal property, the issues of fact shall be tried by a jury, unless a jury trial is waived.

Appellants imply that, under rule 38.01, a jury trial is guaranteed in all actions involving specific real property. The rule, however, does not enlarge the constitutional right to a jury trial. *State by Humphrey v. Alpine Air Prods., Inc.,* 490 N.W.2d 888, 895 (Minn.App.1992), *aff'd,* 500 N.W.2d 788 (Minn.1993). The rule serves only as an attempt to list those actions that are "legal" in nature. *Rognrud v. Zubert,* 282 Minn. 430, 434, 165 N.W.2d 244, 247 (1969). Moreover, the supreme court has recognized that the right does not apply to every action involving title to property. *Peters v. City of Duluth,* 119 Minn. 96, 105, 137 N.W. 390, 394 (1912).

■■■ At oral argument, counsel for respondents claimed that appellants were not entitled to a jury trial because the case was a declaratory judgment action. As our rules make clear, however, parties to a declaratory judgment action may be enti-

tled to a jury trial. Minn. R. Civ. P. 57 (right to jury trial exists for declaratory judgment actions in manner provided for by rule 38); *see also State Farm Mut. Auto. Ins. Co. v. Skluzacek,* 208 Minn. 443, 447, 294 N.W. 413, 415 (1940) ("[T]he right of jury trial in its appropriate sphere is safeguarded.").

In determining whether the right to a jury trial applies, this court must consider the nature and character of the controversy as set forth in the pleadings. *Tyroll v. Private Label Chems., Inc.,* 505 N.W.2d 54, 57 (Minn.1993). Although a number of decisions note that "the question of adverse possession is usually one for the jury," those cases, and the cases cited by appellant, involve circumstances where the court has taken the case away from the jury by directing a verdict or entering judgment notwithstanding the verdict. *See, e.g., Glover v. Sage,* 87 Minn. 526, 528, 92 N.W. 471, 471 (1902); *Village of Glencoe v. Wadsworth,* 48 Minn. 402, 403, 51 N.W. 377, 378 (1892). Thus, those decisions stand only for the proposition that the question of adverse possession is for the fact finder, whether it be the jury or the court.

Determining the nature of the present action is critical. An ejectment action, in which the *"recovery of * * * specific real * * * property"* is sought, is an action at law to which the right to a jury trial applies. *Rognrud,* 282 Minn. at 434, 165 N.W.2d at 247 (emphasis added). On the other hand, where the plaintiff is in possession of the property and brings an action to determine an adverse claim to the property, the case is equitable and triable by the court. *Johnson v. Peterson,* 90 Minn. 503, 505–06, 97 N.W. 384, 384–85 (1903).

The supreme court's treatment of an action to register title to real property in *Peters v. City of Duluth,* 119 Minn. 96, 137 N.W. 390 (1912), is also instructive. The court noted that the purpose of such actions was to clear land titles. *Id.* at 103, 137 N.W. at 393. Because this was akin to the equitable action of quieting title, the court determined that the right to a jury trial did not apply, even though the ultimate right of possession of the property may have been involved. *Id.* at 104–05, 137 N.W. at 393.[1]

Appellants claim that their action is one for ejectment. But their pleadings do not allege that they have been ousted from possession of the property or that respondents are in possession. In fact, appellants allege that they are in actual possession of the property. Simply stated, appellants are not seeking "recovery" of the property.

The purpose of appellants' action is similar to that of an action to quiet title or to determine an adverse claim. As with *Peters,* appellants are merely attempting to clear their title, which, at this point, reflects that their property does not extend to the waterline. Although the ultimate right of possession of the property turns upon the court's decision, the nature of the case nevertheless remains focused upon clearing title. Because appellant's action was fundamentally to quiet title or to determine an adverse claim, the action

---

1. The *Peters* court did not seem particularly troubled that case precedent did not establish any right to a jury trial in an action to quiet title or its functional equivalent. Indeed, the *Peters* court, having examined the nature of proceedings to "clear and quiet title," specifically noted that

> it follows that the constitutional right to a jury trial does not apply. There was no such right upon the ancient bill to remove cloud and quiet title * * *.

119 Minn. at 103–04, 137 N.W. at 393 (citation omitted). The *Peters* court simply took the analysis one step further and concluded that if there was no right to a jury trial in a quiet title action, there should be no right to a jury trial in a land registration proceeding, which it characterized as

> nothing more or less than an enlargement of the remedy to quiet title. The fact that the ultimate right of possession may be involved does not change the nature of the proceeding. Such right is involved in all actions concerning the title to real property.

*Id.* at 105–06, 137 N.W. at 393 (citations omitted).

is one that would traditionally be considered equitable. Accordingly, appellants were not entitled to a jury trial as a matter of right.

If the nature of an action is such that no right to a jury trial exists, the decision to submit the case to a jury is within the district court's discretion. *Alpine Air Prods.*, 490 N.W.2d at 895. Given the absence of a bright-line rule and because of the factual and legal complexities in this dispute, the district court did not abuse its discretion in denying a jury trial.

### 2. Adverse possession of "quasi-public" property

Minn.Stat. § 541.01 (1996) bars acquiring title by adverse possession to "a public way, levee, square, or other ground dedicated or appropriated to public use." The district court concluded that the waterfront was "quasi-public" property and, thus, not subject to adverse possession under the statute. This court reviews the district court's construction of a statute de novo. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 702 (Minn.1999).

The district court derived its characterization of the waterfront as quasi-public from the supreme court's decision in *Bryant v. Gustafson*, 230 Minn. 1, 40 N.W.2d 427 (1950). *Bryant* involved an island subdivided into 42 lots. *Id.* at 3, 40 N.W.2d at 430. A lane that ran through the island to the water was dedicated to the use of all of the lot owners. *Id.* The supreme court indicated, but did not hold, that the dedication might have been "a dedication to a quasi public use." *Id.* at 9, 40 N.W.2d at 433.

Assuming the waterfront is properly characterized as "quasi-public," there is no authority for the proposition that it cannot be adversely possessed. In the factually similar case of *Bryant*, the supreme court held that the parties had not acquired title to the lane by adverse possession, not because it was quasi-public property, but rather because the elements for adverse possession had not been satisfied. *Id.* at

10, 40 N.W.2d at 433–34. Moreover, the plain language of Minn.Stat. § 541.01 limits the prohibition on adverse possession to property dedicated to public, not quasi-public, use. Accordingly, the district court's determination that appellants could not, as a matter of law, acquire title by adverse possession was erroneous. That error, however, is harmless because the district court alternatively found that appellants failed to prove adverse possession.

### 3. Failure to establish adverse possession

Appellants challenge the court's findings that they failed to establish the elements of adverse possession. On appeal, a district court's findings will not be set aside unless clearly erroneous. Minn. R. Civ. P. 52.01. A finding is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (quotation omitted). In adverse possession cases, the evidence is to be strictly construed "without resort to any inference of presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Weis v. Kozak*, 410 N.W.2d 903, 905 (Minn.App. 1987) (quotation omitted).

"The elements necessary to establish adverse possession * * * require a showing that the property has been used in an actual, open, continuous, exclusive and hostile manner for 15 years." *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999). The party seeking to establish adverse possession must do so by clear and convincing evidence. *Id.*

The district court found that appellants had not established "hostile" possession which, by itself, defeated their claim. Generally, the requirement of hostile possession refers to acts showing the adverse possessor's intention to claim exclusive ownership of the property against all others. *Morken v. Morken*, 375

N.W.2d 576, 577 (Minn.App.1985). But where the property dispute is between co-tenants, it is presumed that the disseizor possesses the lands with the implicit permission of his cotenants. *Id.* at 578. In order to overcome the presumption, the disseizor must establish an ouster of the other cotenants "consisting of acts or declarations of hostility sufficient to indicate a truly adverse possession and to start the statute of limitations running." *Adams v. Johnson,* 271 Minn. 439, 442, 136 N.W.2d 78, 81 (1965). The adverse possessor must present clear and unequivocal proof of the inception of hostile possession. *Burns v. Plachecki,* 301 Minn. 445, 449, 223 N.W.2d 133, 136 (1974).

■ Considering the stringent burden of proof and the presumptions against appellants, the district court did not clearly err in finding appellants had not proven hostile possession. Although there was evidence that appellants constructed docks, boathouses and even a fence on the waterfront, that construction was not entirely inconsistent with their property interest in the waterfront. And, more importantly, the record supports the finding that respondents had not been "ousted." A number of back lot residents testified that they used the waterfront without asking for permission. Accordingly, the district court's determination that appellants had not proven adverse possession was not clearly erroneous.

### 4. Whether the property can, as a matter of law, be abandoned

■ The district court concluded that respondents had a fee interest in the waterfront that could not, as a matter of law, be abandoned. The legal title to real property cannot be lost by abandonment. *Meyers v. Meyers,* 368 N.W.2d 391, 394 (Minn.App.1985), *review denied* (Minn. July 17, 1985). Easements, however, may be lost by abandonment. *Hickerson v. Bender,* 500 N.W.2d 169, 171 (Minn.App.

1993). This issue, then, turns on the nature of respondents' property interest under the dedication.

■ The district court's decision was based on Minn.Stat. § 505.01 (1996),[2] which provides in pertinent part:

[E]very donation to the public or any person · or corporation noted thereon *shall operate to convey the fee of all land so donated,* for the uses and purposes named or intended, with the same effect, upon the donor and the donor's heirs, and in favor of the donee, as though such land were conveyed by warranty deed.

(emphasis · added). Notwithstanding that statutory language, our courts have held that a dedication donee does not own the dedicated property in fee simple, but that the donee receives only the estate necessary to fulfill the purposes of the dedication. *Headley v. City of Northfield,* 227 Minn. 458, 463, 35 N.W.2d 606, 609 (1949); *Larson v. Sando,* 508 N.W.2d 782, 787 (Minn.App.1993), *review denied* (Minn. Jan. 21, 1994).

■ The Simpkins dedication operated to convey the use, not the ownership, of the accesses and waterfront. As such, it is an easement that is subject to loss through abandonment. Thus, the district court erred in concluding respondents could not abandon the easement.

### 5. Failure to establish abandonment

■ In *Norton v. Duluth Transfer Ry. Co.,* 129 Minn. 126, 131–32, 151 N.W. 907, 909 (1915), the supreme· court considered the requirements for divestiture of title by abandonment:

To have the effect of divesting title and reinvesting the same in the grantor of the easement the abandonment must amount to something more than mere nonuser, for there must appear to have

---

**2.** This statute has been renumbered and subjected to slight language changes but has not been altered substantively for 150 years. *Cf.*

*Schaller v. Town of Florence,* 193 Minn. 604, 608, 259 N.W. 529, 532 (1935) (reciting the 1858 version of the statute).

been an intentional relinquishment of the rights granted.

In the present case, there was ample evidence to support the district court's conclusion that respondents had not intentionally relinquished their rights to use the waterfront. As previously noted, respondents presented testimony that they had, in fact, used the waterfront. Accordingly, the district court's findings in this regard were not clearly erroneous.

## 6. Amending the complaint

 The district court should freely grant leave for a party to amend its pleadings, except where amendment would prejudice the other party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The court's decision on whether to allow amendment is committed to its discretion. *Utecht v. Shopko Dept. Store*, 324 N.W.2d 652, 654 (Minn.1982). The district court declined to allow appellants to amend their complaint to add a practical location claim because amendment would prejudice respondents.

Appellants argue that amending their complaint would not have prejudiced respondents. We disagree. Although the doctrine of practical location, at least in effect, is similar to acquiring title by adverse possession, the two theories are distinct and require proof of different elements. *See In re Petition of Bldg. D, Inc.*, 502 N.W.2d 406, 408 (Minn.App.1993), *review denied* (Minn. Aug. 24, 1993); *see also In re Petition of McGinnis*, 536 N.W.2d 33, 35–36 (Minn.App.1995) (setting forth the elements for practical location), *review denied* (Minn. Oct. 27, 1995). Because appellants brought the motion to amend after their case-in-chief and, thus, respondents had no opportunity to cross-examine appellants' witnesses, the district court's denial of the motion was not an abuse of discretion.

## 7. Declaration of rights

The district court's declaration of rights provided that the back lot owners would have "exclusive" use and enjoyment of the accesses. Appellants argue the district court had no basis for excluding them from the accesses. We agree. There is no evidence in the record supporting a conclusion that appellants have somehow lost their rights to the accesses and respondents never requested that appellants be excluded from the accesses. Accordingly, the district court erred by excluding appellants from the accesses, and we modify the declaration of rights so that it provides appellants and respondents with equal right to the use and enjoyment of the accesses, consistent with the original dedication.

## DECISION

The district court's findings that appellants failed to prove adverse possession and abandonment were supported by the record and were not clearly erroneous. Furthermore, the court did not abuse its discretion in denying a jury trial or amendment of the complaint. The court did err, however, in awarding respondents exclusive use of the accesses and we modify the award to conform to the original dedication.

**Affirmed as modified.**