Michael BOLEN, et al., Respondents,

v.

Todd GLASS, Appellant (A06–1422).

Michael Bolen, et al., Respondents,

v.

Todd Glass, Defendant,

City of Duluth, Appellant (A06–1440).

Nos. A06–1422, A06–1440.

Court of Appeals of Minnesota.

Sept. 4, 2007.

Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for respondents Michael Bolen et al.

Bradley J. Gunn, Malkerson, Gilliland & Martin, LLP, Minneapolis, MN, for appellant Todd Glass.

M. Alison Lutterman, Deputy City Attorney, Duluth, MN, for appellant City of Duluth.

Considered and decided by WILLIS, Presiding Judge; RANDALL, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

These consolidated appeals involve a dispute over a landowner's right to construct a private driveway on adjacent property dedicated in 1902 to become a public street. The City of Duluth granted Todd Glass a permit to install a driveway on the dedicated, but never-established, "street." Michael and Deborah Bolen hold the fee to part of the property that constitutes the would-be street. They contend that Glass lacks the right to construct the driveway and the city lacks authority to permit its construction, which they allege constitutes a trespass on their property. Joseph Zajac also owns part of the historically dedicated street, and he also challenges the city's authority to permit the driveway on his portion of it. The district court agreed with the Bolens and Zajac, and it issued a permanent injunction ordering Glass to restore the property to its prior condition. The city and Glass filed separate appeals, which have been consolidated.

Because the district court accurately determined that Glass lacks the right and the city lacks authority to permit Glass to construct a private driveway on a platted, undeveloped street dedicated to public use, we affirm the injunction issued in favor of the Bolens and Zajac. But because the district court abused its discretion by requiring Glass to remove even that portion of the driveway that lies on his property, we modify the district court's order to require Glass to restore only those portions of the corridor that are owned by the Bolens and Zajac.

## FACTS

The property owners in this dispute own lots abutting "40th Street" in the City of Duluth's Park Point neighborhood. The street has never been improved by grading or paving from its natural condition. The short corridor appears as "Interlachen Street" on a certified and recorded plat described as the Oatka Beach Addition, accepted by the city council in December 1902. The 1902 fee owner specifically "dedicate[d] to the public use the streets and avenues herein shown" in accordance with statute. *See* Minn.Stat. § 505.01 (2006) (authorizing filing of plats, which may include donation of land for any public use); *Denman v. Gans,* 607 N.W.2d 788, 795 n. 2 (Minn.App.2000) (recognizing that this statute "has been renumbered and subjected to slight language changes but has not been altered substantively for 150 years"), *review denied* (Minn. June 27, 2000).

In 1909 the city renamed Interlachen Street as 40th Street, but the city has never developed, used, or maintained 40th Street as a public roadway. It has, however, installed a street sign and curb cut, as it has done with a number of other "street ends" or "paper streets" on Park Point. On paper only, these northeast-southwest running street ends connect Minnesota Avenue, the primary public thoroughfare on Park Point, with "Lake Avenue," another dedicated but unimproved paper street, which runs northwest-southeast and parallel to Minnesota Avenue along the Lake Superior shoreline. The city acknowledges that it "likely [will never] develop" 40th Street as a public street.

Measured by lots, 40th Street is two lots long. The centerline of 40th Street is the eastern border of Lots 24 and 11, owned by Michael and Deborah Bolen. The centerline is also the western border of Lot 15, which is currently owned by Joseph Zajac, and Lot 1, which is one of three adjoining lots that comprise an L-shaped

parcel currently owned by Toss Glass.[1] Glass's L-shaped parcel abuts the north and east borders of Lot 15. The owners of Lot 15 have historically used a driveway that is located within the 40th Street corridor to access Minnesota Avenue. Lot 15's driveway lies entirely on Lot 15, except for a portion that extends lengthways over the centerline onto Lot 24 by consent of the owners of Lot 24.

Until this dispute, owners of the L-shaped parcel that Glass now owns have accessed Minnesota Avenue by a driveway running along the east border of, and lying entirely within, that parcel. When Glass purchased the L-shaped parcel in 1998, he used that driveway. In June 2003, Glass added gravel to extend the driveway across his property toward the west, effectively connecting all three lots of his L-shaped parcel with an L-shaped driveway. Glass testified that he "wanted a secondary vehicular access so that [he] could drive up to the parking pad using the narrow driveway, but then exit the property using the 40th Street right-of-way."

In October 2004, Glass disabled the gravel driveway that had given the property access to Minnesota Avenue by covering it with sod, leaving only the 2003 extension. He testified that he covered the driveway because it was too narrow and that its removal would allow him eventually to build an addition on his house and still meet the city's impervious-surface requirements. In February 2005, Glass applied for a permit to build a garage on Lot 1. He then applied for a permit to construct a driveway on 40th Street so that he could access the new garage. The city granted the permit to allow Glass to "construct private improvements within the platted right-of-way of 40th St[reet] South to provide access to the driveway to Lot 1." The Bolens sued Glass in June 2005, immediately after the city granted the permit. Glass constructed the driveway on part of each of the four lot extensions within the 40th Street corridor: Lot 1, owned by Glass; Lots 11 and 24, owned by the Bolens; and Lot 15, owned by Zajac.

Evidence was presented at trial regarding the historic use of 40th Street. A driveway on 40th Street has always provided access to Minnesota Avenue from the house and garage located on Lot 15, which is currently owned by Zajac.[2] For many years, 40th Street also provided access to a small house known as the "wee" house, located on Lot 1 on the L-shaped parcel. A sidewalk led from the wee house to the driveway that is located on Lot 15 within the 40th Street corridor.

While the parties dispute the extent of the use of 40th Street by the occupants of the wee house and whether that use was by consent of the owner of Lot 15, it is

---

1. The plat consists of four blocks with a total of 164 lots. The Bolens' current lots are within Block 1, and Zajac's and Glass's lots are in Block 2. For convenience, we will refer to the lots by lot number only without regard to their separate block assignments.

2. Henry O'Donnell owned Lots 1, 2, and 16, the current L-shaped parcel, from 1904 to 1981. He acquired Lot 15 in 1928 and owned it until 1951 when the lot was sold to leave the L-shaped parcel. The L-shaped parcel continued to be owned by O'Donnell or his family until 1998 when Glass bought it. Meanwhile, Lot 15 changed hands several times until 1981, when it was sold to the Bolens. In 1986, the Bolens purchased their parcel on the other side of 40th Street, including Lots 11 and 24, and they sold Lot 15 to Zajac. The use of 40th Street to access Lot 1 appears to have changed when the Bolens and then Zajac purchased Lot 15. The Bolens testified that on rare occasions, they allowed Pamela Haugen, O'Donnell's granddaughter, to use 40th Street when she owned the L-shaped lot. In a 1990 dispute between Haugen and Zajac, the Duluth City Attorney opined in a letter that the Bolens and Zajac each had the right to control the use of the street in front of their lots.

fairly clear that when the wee house was occupied, its residents were allowed to access Minnesota Avenue by parking a vehicle on Lot 15's driveway on 40th Street and walking to the wee house. The wee house was condemned by the city in 1996 and demolished before Glass purchased the L-shaped parcel in 1998.

It is also quite clear that the various owners of the lots that incorporate 40th Street have sought to maintain the corridor as private, discouraging public use by planting tall grasses, trees, and shrubs within it. The terrain itself presents an obstacle to vehicular travel, with a thirteen- to fourteen-foot elevation from the southwest, which results in a steep embankment within the corridor. Glass disturbed that bank and some of the vegetation when he constructed his city-permitted driveway in 2005.

Following a two-day trial, the district court found that although the plat with its street dedication was recorded in 1902, the city has never "by formal legislative enactment or executive resolution ... taken steps to develop the platted 40th Street [c]orridor easement as a public street or thoroughfare such that the easement in question remains a 'paper street.'" The court further found that the Bolens and Zajac,

> as to that portion of the 40th Street [c]orridor easement which abuts their respective lots, own the fee title to the property abutting said lots ... to the centerline of said easement, subject only to the rights of the [city] to accept the "plat dedication" for the purpose of developing a public thoroughfare.

The district court concluded that the city exceeded its power by permitting "a private citizen to develop a public easement for private driveway purposes" because the permit essentially "attempted to overlay a public easement with a private easement, thus creating property rights and property burdens without authority to do so."

It held that Glass therefore "cannot, by grant from a public authority, acquire rights in a dedicated public easement in derogation of the public's ultimate easement rights or which burdens the adjoining servient estates in excess of the burden imposed by the plat dedication." The court permanently enjoined the city and Glass from developing the 40th Street corridor "except by proper legislative enactment and subsequent development of a public thoroughfare." The court ordered Glass to remove all improvements within the 40th Street corridor and to fully restore the property to its prior condition within 45 days. These consolidated appeals follow.

## ISSUES

I. Did the district court abuse its discretion by adding a testifying witness as a plaintiff after trial?

II. Does the owner of a lot within a plat have the right unilaterally to construct a private driveway on neighboring property that has been dedicated but not used as a public street?

III. Was the City of Duluth authorized by its code to grant a person permission to construct a private driveway on property owned by the person's neighbors within a corridor dedicated but not used as a public street?

IV. Did the district court abuse its discretion by ordering a person to restore land to its unimproved condition on the portion to which the person holds the underlying fee?

## ANALYSIS

Addressing the parties' challenges to different aspects of the district

court's conclusions on appeal, we must determine whether the district court's findings are clearly erroneous or whether it erred in its application of the law. *River City Mortgage Corp. v. Baldus,* 695 N.W.2d 375, 377 (Minn.App.2005). We will uphold the district court's findings unless they are "manifestly and palpably contrary to the evidence." *Flynn v. Beisel,* 257 Minn. 531, 534, 102 N.W.2d 284, 287 (1960). An appellate court, however, is not bound by findings that are "controlled or influenced by errors of law." *Id.* at 534, 102 N.W.2d at 288. We begin by reviewing the district court's discretion to add Zajac as a party.

## I

■ The district court granted the Bolens' posttrial motion to add Zajac as a plaintiff, without holding a hearing or otherwise entertaining argument from Glass. Glass asserts that he has been prejudiced by the court's decision because (1) Zajac would have been viewed as an interested party while testifying, rather than as a seemingly disinterested witness; (2) Zajac's testimony as a party would have been subject to less-restrictive rules of evidence; and (3) the scope of Glass's liability is broader than he anticipated with only the Bolens as plaintiffs.

■ The Bolens' request was characterized as a motion to amend the complaint to conform to issues tried by consent of the parties under rule 15.02 of the Minnesota Rules of Civil Procedure. The district court has broad discretion to allow an amendment to the pleadings when an issue has been litigated by consent. *Willmar Gas Co. v. Duininck,* 239 Minn. 173, 176, 58 N.W.2d 197, 199 (1953). Allowing an amendment to add a party may be appropriate, even by way of posttrial motion. *See Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 350 (Minn.1981) (affirming grant of posttrial motion to add party).

We see no prejudice to Glass by the amendment. Glass's answer had alleged as an affirmative defense the Bolens' failure to add Zajac as an indispensable party. Glass asserts that the Bolens could have added Zajac as a plaintiff by consent or with permission of the court before trial under rule 15.01. His answer demonstrates that well before trial he recognized that Zajac has a stake in the outcome and should be a party. And it would have been equally clear to the factfinder that Zajac would either benefit or suffer from the district court's decision whether Zajac was designated as a party or not. Because of the nature of the dispute, the court's decision would assign rights and burdens concerning the land within the corridor that is not owned by Glass but upon which Glass built his driveway. This includes the Zajac property. Zajac's interest was apparent, and his testimony was equally impeachable as a nonparty witness or as a plaintiff. Glass has not established how evidentiary offerings, objections, or rulings may have differed materially had there been an earlier party designation, and Glass's liability to Zajac would apparently be the same whether Zajac is a plaintiff in this action or in one to follow. Better practice would have been to include Zajac as a party at the outset or soon after. But based on our review of the record, we conclude that the district court did not abuse its discretion by adding Zajac as a plaintiff, even when it did so after trial. We next consider the principal substantive question, which is whether Glass has a private right to construct a driveway on 40th Street to connect his parcel to the public thoroughfare.

## II

Glass and the city forward various theories to support their contention that Glass has a right to 40th Street that entitles him to construct a driveway to serve his prop-

erty and allow private access to Minnesota Avenue. None persuades us.

They argue that Glass has the right to use 40th Street because the street is an open public street and he may use it as a member of the public. But the district court found that the street is a "paper street" only. And the evidence fails to compel the contrary finding that the street is "open" to the public. The city has never petitioned to open the street or maintained the corridor for public use. *See, e.g., In re Maintenance of Road Areas Shown on Plat of Suburban Estates,* 311 Minn. 446, 451–52, 250 N.W.2d 827, 831 (1977) (noting that "municipality may determine the time it will open a street" and advising owners to formally present request to town board to open and maintain roads); *Village of Medford v. Wilson,* 304 Minn. 250, 254, 230 N.W.2d 458, 460 (1975) (affirming right of village to open street dedicated by plat when it serves public purpose). Rather, the city has acknowledged that the abutting property owners may exclude the public, and it admitted that it intends never to improve the corridor for public travel.

■ Glass argues that the street became open by virtue of the city's acceptance of the 1902 plat that contained the dedication of the street easement. He cites no authority for this proposition, and the city's brief does not join him in it; he merely contends that because there normally are no "parades and ribbon-cutting ceremonies to commemorate the opening of a city street," the acceptance of the dedication itself was sufficient to open it. Caselaw leads us to a different conclusion. In *Lafayette Land Co. v. Village of Tonka Bay,* a landowner sued to compel the village to open a portion of a road that, like 40th Street, had been dedicated to the municipality but not improved to accommodate vehicular travel since its dedication. 305 Minn. 461, 461–62, 234 N.W.2d 804–05 (1975). The supreme court af-

firmed the district court's decision not to open the road. *Id.* at 462–64, 234 N.W.2d at 805–06. If municipal tacit acceptance of a platted dedication alone were sufficient to open a roadway on unimproved land for public use, the supreme court would have had no basis to affirm.

Glass and the city also contend that the 1902 dedication combined with its public use since that time opened the street. The two cases they rely upon do not support their position. In *Anderson v. Birkeland,* the supreme court considered whether a roadway that had been graded, oiled, and resurfaced for public use by the county at public expense for six years and that was used as a roadway by the public for at least 17 years had thereby been offered and accepted as a public roadway by statutory or common-law dedication. 229 Minn. 77, 80–84, 38 N.W.2d 215, 218–20 (1949). On those facts of clear public use, the roadway was deemed to be public. *Id.* at 85–86, 38 N.W.2d at 220–21. Not only is *Anderson* factually dissimilar from this case because of the extensive use of the corridor as a public roadway, it also addressed a different legal issue. Unlike the roadway in *Anderson,* there is no question whether 40th Street was dedicated, or whether the dedication was tacitly accepted by the city for its potential, eventual use as a roadway. The questions Glass and the city introduce are whether the street has been and is opened by the city for public use and, if so, whether Glass may construct a private driveway on it. *Anderson* is factually and legally inapposite.

The second case the parties cite comes closer to the issue but not to the relevant facts: *In re Request of Lafayette Dev. Corp. to Open 18th Ave. S.,* 567 N.W.2d 743 (Minn.App.1997) *aff'd mem.,* 576 N.W.2d 740 (Minn.1998). In *Lafayette Development,* we held for the first time that a

dedicated roadway's opening can occur without a municipality making improvements to the roadway. *Id.* at 745. We determined that the city could not prohibit the use of a corridor that had been dedicated as a public street because postdedication public use of the corridor as a roadway established that it was a street opened to public use. *Id.* But in that case, the disputed dedicated corridor was the natural extension of an existing, paved city street, had been graded and graveled for vehicular use, and had been used "for many years" for vehicular travel by the landowner, a neighboring landowner, tenants, and invitees. *Id.* at 744. The district court did not find that ongoing and current vehicular use occurred on the disputed 40th Street corridor, and the facts would not support that finding.

Glass highlights that the corridor was used as an amusement park in the early 1900s, that "40th Street" appears on a city map, that there have been walking paths in the corridor, and that the city has installed a curb cut and a street sign. Together with the dedication, he argues, these facts demonstrate that the corridor is already an open street. We are not convinced. That an amusement park operated on the property 100 years ago does little to support the notion that the city opened the corridor for use as a public roadway. Walking paths are also not roadways, and the evidence indicates that the landowners and the city recognized that the owners of the corridor could, and did, restrict public access to it. That the city installed a sign and a curb cut and included the corridor as a "street" on maps certainly might suggest its intent to open the street for public-roadway use *in the future.* But Glass's argument as supported by *Lafayette Development* depends on whether the street is already open as a public roadway, and the city has expressly indicated that it does not intend to exercise its authority to develop the street for

that use. The city adds that it has also installed a bituminous apron at the curb cut. This suggests only that if the city changes course and does open the street for public use, it likely will pave the street. At the very least, we can assume that the city will not indicate that the corridor is open for use as a city street until it removes the trees and shrubs that the landowners have planted to discourage public access, with the city's approval. The idea that the street is already open to public use lacks sufficient factual support.

■ Although Glass has rights to use the portion of the unopened street that lies on his own property, any right he might have to use the street *as a member of the public* is subject to the rights of the individual property owners of each segment of it.

> [A]ny abutting landowner owns to the middle of the platted street or alley and . . . the soil and its appurtenances, within the limits of such street or alley, belong to the owner in fee, subject only to the right of the public to use or remove the same for the purpose of improvement.

*Kochevar v. City of Gilbert,* 273 Minn. 274, 276, 141 N.W.2d 24, 26 (1966). Even when public improvements are deemed necessary, a municipality must show that the improvement serves a public purpose and must follow proper procedures before making those improvements. *See id.* at 277, 141 N.W.2d at 27. The city engineer issued the permit to Glass without any public notice or input, and no evidence was presented to show that Glass's proposed driveway would serve any public purpose. There is no dispute that he intends the driveway to serve only to access his private garage.

We also do not agree with the contention that Glass has the right to install a driveway on 40th Street merely because he

owns a lot within the plat. Under certain circumstances, the owner of a lot within a plat may obtain rights to use dedicated areas in the plat that do not directly abut his property. For example, in *Bryant v. Gustafson*, a plat expressly dedicated the use of named roadways to the lot owners of the plat. 230 Minn. 1, 3, 40 N.W.2d 427, 430 (1950). The disputed roadway was dedicated specifically for their use rather than for public use, and the plat was not within any municipality. *Id.* at 10, 40 N.W.2d at 434. The residents of the platted lots in *Bryant* had used parts of these designated roadways to access the lake for a period of over 25 years, and when a new owner sought to exclude these other resident-users as trespassers, the excluded residents successfully sued to regain their access. *Id.* at 5, 12, 40 N.W.2d at 431, 434. Here, however, the plat dedicated 40th Street for *public* use and, unlike in *Bryant*, there is little evidence in the record that the identified beneficiaries (here, the public) have ever used the corridor as a street.

It is true that the supreme court has acknowledged the general rule that "one purchasing a lot within a plat may rely upon the dedication of streets and alleys shown therein, and possesses the right to use the same." *Etzler v. Mondale*, 266 Minn. 353, 364, 123 N.W.2d 603, 611 (1963). But this rule applied only to entitle the owners in a plat to notice of vacation proceedings and, potentially, damages related to the vacation, not to any private right to improve unilaterally and use dedicated property. *Id.* at 364–65, 123 N.W.2d at 611–12 (affirming district court's grant of petition to vacate part of plat dedicated as park and holding that other lot owners in platted area should receive notice of vacation proceedings).

Glass faces two significant obstacles to his assertion of the right to employ self-help in creating his driveway. First, Minnesota courts have not established the more extreme rule urged by Glass and expressed by several other jurisdictions that the purchasers of property within a plat that dedicates land as streets for public use are entitled to "do whatever is necessary to put [those streets] in a condition for use." 26 C.J.S. *Dedication* § 78 (2001); *see also Village of Baxter Estates v. G.N.M. Constr. Co.*, 49 Misc.2d 333, 267 N.Y.S.2d 663, 666 (N.Y.Sup.Ct.1966) ("As the purchaser and owner of Lots ... on the filed map, the corporate defendant has an absolute right to open up and improve the unopened portions of [certain paper streets] for persons going to and from its lots; nor would this right be impaired even if [the defendant] did not have title to the roadbeds."). Here, municipalities are authorized to choose a careful approach to the improvement and opening of dedicated land for public use. As discussed above and implied by various holdings, in Minnesota, municipalities, not neighboring landowners, decide whether a property dedicated for a particular use will be improved to accommodate that use. *See Pierro v. City of Minneapolis*, 139 Minn. 394, 395, 166 N.W. 766, 766 (1918) ("It is settled law in this state that when a street is dedicated by plat, the city may choose its own time to occupy, open and use the street."); *see also Etzler*, 266 Minn. at 359–60, 365, 123 N.W.2d at 608, 611–12 (noting that the district court acted within its discretion to credit municipality's resolution to vacate park dedication); *Lafayette Land Co.*, 305 Minn. at 463–64, 234 N.W.2d at 806 (affirming municipality's authority to refuse to open a dedicated street over demand of interested would-be user); *Maintenance of Road Areas*, 311 Minn. at 451–52, 250 N.W.2d at 831 (asserting city's authority to decide when a street would be opened for use).

■ If Glass's legal theory were correct, the Bolens or Zajac, or *any* of the other owners of the 164 lots established by the platted, 1902 Oatka Beach Addition, could by right arrive tomorrow with a bulldozer and a load of gravel and level 40th Street from Minnesota Avenue to the lake. We see no support for this theory in Minnesota law, which contemplates a deliberate, municipality-controlled approach to improvements to and use or vacation of dedicated land. We hold that the owner of a platted lot within a municipality does not, by virtue of a public street dedication of land elsewhere within the plat, have the right unilaterally to improve the dedicated land for use as a street.

Second, even if Minnesota law authorized any private landowner in a plat to improve property elsewhere within the plat to fulfill the purpose of a plat dedication, Glass has not taken steps, and the city has not directed him, to open 40th Street for the purpose for which it was dedicated. Although the dedication is for a publicly usable street, Glass has created merely a private driveway on Zajac's and the Bolens' properties to access his private garage by connecting to Zajac's private driveway. By his improvement the public enjoys no more access than before. Although Minnesota caselaw demonstrates that Glass has a right to receive notice attendant to the disposition of platted but unopened streets, and he may, as an interested party, be entitled to measured damages arising from the vacation of those streets, it does not establish that he has the right to construct a private driveway for private use on portions of the 40th Street corridor that rest on property to which other landowners hold title.

Glass next argues that he has a constitutional right to use 40th Street to access Minnesota Avenue from his property. Elsewhere, he argues that he has a constitutionally protected right of access from his property. The distinction between a *constitutional right* to access property and a *constitutionally protected right* to access property is not simply a difference in semantics. If Glass has an actual constitutional right to access his property, the government—in this case the city—may have a "constitutional obligation to provide sufficient public street access to the Glass property," exactly as he argues. If, instead, his right to access his property arises from some other source and concerns the relationship between neighboring landowners, it is a right that the state need not itself satisfy. Rather, it is a private right that the state or local government may not infringe without due process and just compensation. We therefore first clarify the nature of the right.

■ A landowner's right to access his property arises from common law. Property interests are not created by the Constitution. *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although property interests are protected by the federal Due Process and Takings Clauses, the property interests themselves arise from independent sources, such as state law. *Id.; see also Hughes v. Washington,* 389 U.S. 290, 295, 88 S.Ct. 438, 441, 19 L.Ed.2d 530 (1967) (Stewart, J., concurring) ("[A]s a general proposition . . . the law of real property is, under our Constitution, left to the individual States to develop and administer."). It is true that, in Minnesota, landowners have the right of access from their property to a public right-of-way. *Johnson v. City of Plymouth,* 263 N.W.2d 603, 605–06 (Minn.1978). But the supreme court in *Johnson* did not indicate that this right arises from the state or federal constitution. Rather, it noted that the right is recognized "under Minnesota law," and the cases it relied upon trace back to common-law origins, not to constitutional precepts.

*See id.* (citing cases). It is also true that a governmental taking of a property right of access requires just compensation under the state and federal constitutions, but this is all that is established by the cases cited by Glass. *See id.* at 606 ("Like other property rights, the right of reasonable access can be infringed or 'taken' by the state, giving the property owner a constitutional right to compensation."); *Hendrickson v. State*, 267 Minn. 436, 445–46, 127 N.W.2d 165, 172–73 (1964) ("If the jury decides that the location of the proposed interchange substantially impairs plaintiffs' right to reasonably convenient and suitable access to the main thoroughfare, plaintiffs are entitled to damages."). The right of access is a common-law property right that is constitutionally protected from noncompensated governmental taking; it is not itself a constitutional right that obligates the government to take affirmative steps to require one's neighbors to allow access over their property.

Having concluded that Glass's right of access to his property is a common-law right, we must decide if the right is satisfied in this case. We hold that it is. As the district court found, Glass's parcel has direct access to Minnesota Avenue already, and he and the prior parcel owners relied on that access for years. Although it may be more convenient for Glass to discard his original driveway and reach Minnesota Avenue by 40th Street, he has not contended that this change is "necessary." *See Magnuson v. Cossette*, 707 N.W.2d 738, 745 (Minn.App.2006) (applying doctrine of easement of necessity and noting that the "easement must be more than a mere convenience"). Glass attempts to establish hypothetical necessity by insisting that exercising his right to sever his L-shaped parcel by selling Lot 1 would leave the owner of the severed lot landlocked and without access to Minnesota Avenue except by 40th Street. This assertion does not help his position for two reasons.

First, we must decide the case on the present facts, and presently, Glass owns the entire parcel, which abuts Minnesota Avenue with no need to rely on 40th Street. And although the individual lots theoretically could have been singly owned by different individuals, they were not. The record establishes that the owner of Lot 1 always also owned at least Lots 2 and 16, allowing direct access to Minnesota Avenue from the parcel. And even if Lot 1 had previously been separately owned and landlocked, Glass's ownership of the merged three lots eliminated Lot 1's hypothetical need to rely on any other lot to access the public thoroughfare. "The merger doctrine is intended to extinguish easements when title to the dominant and servient estates are united in one fee owner simply because one has no need for an easement in property one owns in fee." *Pergament v. Loring Props., Ltd.*, 599 N.W.2d 146, 151 (Minn.1999).

Second, Glass's hypothetical future sale would not leave the landlocked owner of Lot 1 without a remedy because she could either petition the city to open 40th Street or rely on the common-law principle of implied grant of easement by necessity. When a landowner conveys part of his land and retains another, he is presumed to convey to the owner of the landlocked portion an easement of access to the thoroughfare across the retained portion. *Romanchuk v. Plotkin*, 215 Minn. 156, 160–61, 9 N.W.2d 421, 424 (1943) (outlining elements of easement by implication of necessity). The district court properly rejected Glass's right-to-access argument. Glass has adequate access by Lot 16, which he and his predecessors have long relied on to reach the house on Lot 2.

We conclude that the district court did not err by determining that Glass lacks the right to construct a private driveway on property owned by the Bolens and Zajac

within the 40th Street corridor. We must next decide whether the city has, nevertheless, lawfully conferred that right to Glass.

## III

The district court determined that the city exceeded its authority by granting a permit to "allow a private citizen to develop a public easement for private driveway purposes." The city claims that the district court ignored the authority granted by its Legislative Code, which includes a charter and general ordinances. We do not read this code to confer the claimed authority.

The city contends that it derives the authority to issue the permit to Glass on the following provision of the city charter: "The council may by ordinance permit abutting owners to make use of portions of public highways not physically being used or occupied by the public upon such terms and conditions and by such procedure as the council, in each such ordinance, may provide." Duluth, Minn., City Charter ch. XIII, § 100(d) (1964). The city asserts that under this section, it enacted a general ordinance giving the city engineer the authority to "issue special permits to private parties to make local improvements in, upon or under the public highways and public grounds of the city, as such local improvements are defined and authorized by Chapter IX of the City Charter." Duluth, Minn., Legislative Code § 45–84.

We disagree that section 100(d) authorized the city to permit Glass to construct a private driveway within the corridor on the Bolen and Zajac properties. First, section 100(d) expressly concerns permitted use by abutting property owners, and Glass does not fit that description for the challenged portions of his proposed driveway. An abutting property is one that "share[s] a common boundary." *Black's Law Dictionary* 11 (8th ed.2004); *see also Kochevar*, 273 Minn. at 276, 141 N.W.2d at 26

(describing "abutting landowner['s]" ownership as extending to the centerline of the segment of the street adjacent to the landowner's lot). Glass is an abutting owner only so far as his property extends lineally along the 40th Street corridor beside Lot 1; Glass is not an abutting owner on the southern half of the corridor where the centerline marks the boundary between Lots 24 and 15, owned by the Bolens and Zajac, and his private rights to the northern half do not extend west of the centerline.

Second, section 100(d) authorizes the city council "*by ordinance* [to] permit" abutting owners to use an unused or unoccupied part of a public highway based on the terms that "each such ordinance" may provide. The city enacted no ordinance permitting and defining the terms of Glass's use of the public-roadway easement. While the city contends that section 45–84 is such an ordinance, that section concerns local improvements by private parties upon or under *public* highways and *public* grounds. And a party making improvements under the ordinance must "assign, set over, and transfer unto the city, in trust *for the use and benefit of the public,* such improvement." Duluth, Minn. Legislative Code § 45–86 (emphasis added). Section 45–84 contemplates local improvements for the public benefit. It does not purport to authorize permission to make improvements exclusively for private use. We conclude that section 45–84 did not authorize the city to permit Glass to build his private driveway along portions of the 40th Street corridor that abut property owned by the Bolens and Zajac. We therefore need not consider the larger question, whether the city has the constitutional authority to do so. We hold that the district court correctly determined that the city code did not authorize the city to permit Glass to enter, modify, and use those portions of the 40th Street corridor that he does not own. The only remaining

question is whether the district court went too far by requiring Glass to restore the portion of the corridor that he does own.

## IV

Glass asserts that the district court erred by ordering him to restore the entire 40th Street corridor to its previous condition, even those parts that abut Lot 1 and to which Glass holds the underlying fee. Because Glass owns the underlying fee to the centerline of that part of the 40th Street corridor that abuts Lot 1, he is entitled to use that property as he sees fit, "subject only to the right of the public to use or remove [the property] for the purpose of improvement." *Kochevar*, 273 Minn. at 276, 141 N.W.2d at 26. We are not persuaded by the Bolens' and Zajac's response that this injunctive remedy is necessary as an alternative to money damages because the actions taken by Glass, even on his own lot, allegedly "created the appearance of a street, public in nature and inviting public use." The Bolens and Zajac offer no legal support for the novel idea that to remedy a trespass into neighboring property the court may prohibit improvements to the trespasser's property. We therefore modify that part of the district court's decision so as to require Glass to restore only those portions of the 40th Street corridor to which he is not the fee-holder.

## DECISION

The district court acted within its discretion by adding Zajac, a clearly interested party, as a plaintiff after trial. Under Minnesota law, an owner of a platted lot within a municipality does not have the private right unilaterally to improve land to open a street dedicated to public use when he is not the fee holder, and the lot owner in this case also has made improvements insufficient to satisfy the dedication's public purpose. The City of Duluth's legislative code does not authorize the city to permit a lot owner within a plat to construct a private driveway for private use on property beyond the lot owner's title. Although the district court accurately determined that the breaching owner may not construct his driveway on his neighbor's property, it abused its discretion by ordering him to restore the property on those portions of the contested corridor to which he holds the underlying fee. We therefore affirm the district court and modify its judgment only to limit the remedy.

**Affirmed as modified.**